The STATE of Ohio, Appellee,

v.

KINGSLAND, Appellant.

[Cite as *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 07CA853.

Decided Aug. 13, 2008.

C. David Kelley, Adams County Prosecuting Attorney, and Aaron Haslam, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Sarah M. Schregardus, Assistant Public Defender, for appellant.

HARSHA, Judge.

{¶ 1} Joshua Kingsland was a passenger in a pickup truck stopped by police because it had a cracked windshield and lacked a rear bumper. Neither the driver nor Kingsland owned the vehicle, and Kingsland appeared "somewhat very nervous." After walking around the back of the truck several times, the officer smelled what he believed was ether, a precursor used in the manufacture of methamphetamine. When the officer asked what was in the back of the truck, Kingsland said, "[I]t ain't mine" even though the officer had not told Kingsland what he had seen.

{¶ 2} Based on these facts, a jury found Kingsland guilty of illegal possession of chemicals for the manufacture of drugs. On appeal, Kingsland argues that insufficient evidence supports his conviction and that his conviction is against the manifest weight of the evidence. Because the only evidence linking Kingsland to the material in the back of the truck is his presence as a passenger in the truck, his nervousness, and his denial of ownership of any items in the truck's bed, we agree that the state failed to present sufficient evidence that, if believed, would convince the average mind of Kingsland's guilt beyond a reasonable doubt. We therefore reverse his conviction.

## I. Facts

{¶ 3} Around 11:20 p.m. in April 2007, Officer Jeremy Caldwell of the Winchester Police Department stopped a 1993 Chevy S–10 pickup truck because it had a cracked windshield and lacked a bumper. After stopping the pickup, Officer Caldwell checked the bed of the pickup to make sure no one was lying down in it. He then determined that the driver was Paul Black, that Kingsland was the sole passenger, and that the truck belonged to Mark Koller. An identity check of Kingsland disclosed an outstanding warrant for his arrest. However, Kingsland complained that he was no longer wanted by the police because he had already served his jail time, and Officer Caldwell soon verified that the warrant for Kingsland's arrest was no longer in force. Nonetheless, Officer Caldwell believed that Kingsland was acting "somewhat very nervous" and jittery.

{¶ 4} After passing beside the back of the pickup several times, Officer Caldwell sensed an "overwhelming" smell of what he thought was ether coming from the bed of the truck. Ether is a precursor used in the production of methamphetamine. Looking more closely at the contents in the bed of the truck, Officer Caldwell discovered a capped mason jar with a rubber tube in it wrapped in a plastic bag, and he immediately suspected that he had found a meth lab.

Officer Caldwell approached Kingsland and asked him, "What's in the back of the truck?" According to Officer Caldwell, Kingsland replied, "It ain't mine."

{¶ 5} Deputy Sheriff Jeff McCarty arrived on the scene and believed from the smell that there was ether in the mason jar and that the jar contained a "sludge or residue left over from * * * a methamphetamine cook." An inventory search of the truck disclosed a new pack of lithium batteries and a glass bottle with milky residue between the driver's and passenger's seats in the cab of the truck. In the rear of the truck, police found lithium battery shells and plastic bottles and jars with a milky residue. Because these items were typical of a meth lab, the officers placed Kingsland and the driver under arrest. Kingsland asked the officers to fingerprint all of the alleged contraband and denied owning it. However, no scientific tests were performed on these objects before a hazardous-materials crew destroyed everything except the unopened box of batteries.

{¶ 6} The state indicted Kingsland on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041(A) and a third-degree felony. Both Officer Caldwell and Deputy McCarty testified at trial. The state offered Deputy McCarty as an expert witness on meth labs, and he testified that the mason jar contained ether and that ether was a precursor used in the production of methamphetamine. He also identified the residue on the bottles and jars as a by-product from the production of methamphetamine. The defense presented no evidence.

{¶ 7} The jury found Kingsland guilty of the illegal assembly or possession of chemicals for the manufacture of methamphetamine, and the trial court sentenced him to a term of two years in prison. Kingsland filed this appeal.

## II. Assignments of Error

{¶ 8} Kingsland presents two assignments of error:

1. The trial court violated Joshua Kingsland's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court found Mr. Kingsland guilty of illegal assembly or possession of chemicals for the manufacture of drugs. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. (Tr. 460; September 26, 2007, Sentencing Entry.)

2. The trial court violated Joshua Kingsland's rights to due process and a fair trial when it entered a judgment of convictions for illegal assembly or possession of chemicals for the manufacture of drugs, when that judgment was against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. (Tr. 460; September 26, 2007, Sentencing Entry.)

### III. Standard of Review

{¶ 9} When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether that evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This is a test of legal adequacy, not rational persuasiveness. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 10} Our function when reviewing the weight of the evidence, on the other hand, is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. We will order a new trial only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Bethel,* 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, at ¶ 100, citing *Martin,* at 175, 20 OBR 215, 485 N.E.2d 717. We will not reverse a conviction so long as the prosecution presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. *State v. Getsy* (1998), 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866; *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

### IV. Sufficiency of the Evidence

{¶ 11} In his first assignment of error, Kingsland argues that insufficient evidence supports his conviction for illegal assembly or possession of chemicals for the manufacture of drugs. We agree.

{¶ 12} R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." The trial court instructed the jury that methamphetamine is a schedule II drug. On appeal, Kingsland argues that the state presented insufficient evidence proving that he knowingly possessed the precursors of methamphetamine.

{¶ 13} Possession may be actual or constructive. *State v. Butler* (1989), 42 Ohio St.3d 174, 176, 538 N.E.2d 98; *State v. Fry*, Jackson App. No. 03CA26, 2004-Ohio-5747, 2004 WL 2428439, at ¶ 39. "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession." *Fry* at ¶ 39, citing *State v. Hankerson* (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, syllabus, and *State v. Wolery* (1976) 46 Ohio St.2d 316, 329, 75 O.O.2d 366, 348 N.E.2d 351. " '[F]or constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." ' " *State v. Huckleberry*, Scioto App. No. 07CA3142, 2008-Ohio-1007, 2008 WL 623342, at ¶ 34, quoting *State v. Harrington*, Scioto App. No. 05CA3038, 2006-Ohio-4388, 2006 WL 2457218, ¶ 15, quoting *Hankerson*, 70 Ohio St.2d at 91, 24 O.O.3d 155, 434 N.E.2d 1362. Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. *Fry* at ¶ 40. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession. *State v. Riggs* (Sept. 13, 1999), Washington App. No. 98CA39, 1999 WL 727952.

{¶ 14} Initially, Kingsland argues that we cannot consider whether the evidence supports a finding that he constructively possessed the precursors to methamphetamine because the trial court denied the state's motion to instruct the jury on constructive possession. He relies on the principle that "the Constitution protects every criminal defendant 'against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *United States v. Booker* (2005), 543 U.S. 220, 230, 125 S.Ct. 738, 160 L.Ed.2d 621, quoting *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368; see also *State v. Peterson*, Columbiana App. No. 06CO50, 2007-Ohio-4979, 2007 WL 2758670, at ¶ 23 ("[C]ourts cannot base a conviction or increase the penalty for a crime beyond the prescribed statutory maximum on any fact, other than the fact of a prior conviction, which has not been submitted to a jury and proved beyond a reasonable doubt"). In its jury instructions, the trial court defined "possess" to mean "having control over a thing or substance, * * * but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises on which the thing or the substance is found." As we have already noted, constructive possession is present when an individual exercises dominion or control over an item. *Fry*, 2004-Ohio-5747, 2004 WL 2428439, at ¶ 39. Thus, the trial court's instructions sufficiently informed the jury that it could find Kingsland guilty even

if he did not have actual possession of the chemicals, so long as it found that he had exercised control over them.

{¶ 15} We must now determine whether the state presented sufficient evidence to allow the jury to decide whether Kingsland knowingly exercised control over the chemicals found in the pickup truck. Officer Caldwell testified that when he initially approached the pickup, he looked into the truck's bed to make sure no one was there. At that time, he did not notice any of the bottles and jars containing the milky residue. The state presented 11 photographs depicting the items found in the back of the truck, and each of the items containing residue was partially concealed within plastic bags, a bucket, or a bowl. The glass bottle found in the cab of the pickup was also partially concealed in a cardboard box and covered with the unopened package of lithium batteries. Officer Caldwell testified that he walked around the rear and sides of the pickup several times before he smelled what he believed—but could not say for a fact— was ether. Even though Officer Caldwell testified that he had received specialized training in the detection of meth labs and the chemicals associated with the illegal production of methamphetamine, and even though the jars and bottles were in plain view and lit by the lights from his cruiser, he did not discover the contraband until he had almost concluded the traffic stop. Officer Caldwell admitted that the objects in the truck would not have been readily apparent if someone approached the truck in the dark. He also admitted that Kingsland had denied knowing about the contraband, that Kingsland had requested that the police fingerprint the objects, and that no fingerprints had been collected before the objects were destroyed.

{¶ 16} Officer Caldwell's testimony and the exhibits admitted at trial make clear that Kingsland could be a passenger in this truck and not be aware of the bottles, jars, and chemicals. The state presented no evidence showing that Kingsland had any specialized knowledge regarding methamphetamine production or that he should have recognized these objects as components in the production of methamphetamine. There is no evidence regarding what time of day Kingsland got in the truck or how long he had been in it. Thus, all the state showed was mere proximity to the illegal chemicals.

{¶ 17} The only other evidence purportedly connecting Kingsland to these chemicals is Officer Caldwell's testimony that Kingsland had acted "somewhat very nervous and shaky, and uh, was kind of irate, jittery maybe, in—in somewhat of a hurry * * * um, but nervous." Although Officer Caldwell testified that Kingsland appeared more nervous than the average person stopped for a traffic violation, he also admitted that his inquiry about a warrant that was mistakenly in force "[would] make a lot of people nervous." On redirect, Officer Caldwell testified that "when I was approaching the vehicle he kept looking

through the back glass at me. That's actually what made me actually go to the post-to-head position, to where I could be in front of him, to where I can see through the windshield to see hands." On recross, however, Officer Caldwell admitted that at the time he approached the vehicle, "[Kingsland] was in a very animated conversation with whoever was on that cell phone * * * [a]nd when we're in a very animated telephone conversation on a cell phone a lot of times we do move around."

{¶ 18} It is not clear from the record whether any of this nervous behavior observed by Officer Caldwell occurred before or after he informed Kingsland that he was wanted on a warrant. Thus, an examination of the record shows that the cause of and the extent of Kingsland's nervousness is not clear. In any case, we do not believe that Kingsland's being "somewhat very nervous" in itself suffices to prove that he was in the conscious possession of the illegal chemicals.

{¶ 19} Officer Caldwell also testified that Kingsland's initial reaction "when I asked * * * what's in the back of the truck [was] it ain't mine. * * * I didn't even tell 'em what it was yet." The state argues that Kingsland's statement that "[i]t ain't mine" shows guilty knowledge. However, nothing in Kingsland statement shows that he knew what was in the back of the truck. It is not the case that Kingsland denied owning a particular object in a way that would show he was aware it was in the back of the truck. For instance, had Kingsland responded that "those lithium battery shells are not mine" or "that mason jar is not mine," his statement would help to show that he was in the conscious presence of contraband. However, the only inference that the jury could draw from his statement that "[i]t ain't mine" is that he denied owning whatever it was that Officer Caldwell had found.

{¶ 20} Here, we cannot say that the state presented sufficient evidence that, if believed, would convince the average mind of Kingsland's guilt beyond a reasonable doubt. The state's evidence showed that the drugs were found in the pickup, that neither the driver nor Kingsland owned the pickup, and that Kingsland was a passenger in the pickup for some unknown duration. The driver did not testify. None of the state's evidence indicates that Kingsland should have or could have known that he was in close proximity to illegal chemicals based upon their appearance and location in the truck. In order to conclude that it was Kingsland who was in control of the chemicals, jars, and bottles rather than the driver or the owner of the truck, the jury would have to speculate. Officer Caldwell testified that Kingsland appeared "somewhat very nervous," but we do not believe that an individual acting "somewhat very nervous" in itself suffices to show guilt in the absence of any other evidence. See *State v. Bush*, Cuyahoga App. No. 81959, 2003-Ohio-4054, 2003 WL 21757516, at ¶ 12–14 (holding that insufficient evidence proved constructive possession when the defendant was

merely in the vicinity of PCP, the smell of PCP was in the air, the defendant had 34 one-dollar bills, and there was no evidence that the defendant knew what PCP smelled like); *State v. Mayer*, Cuyahoga App. No. 80168, 2003-Ohio-1, 2003 WL 23108, at ¶ 6–12 (concluding that insufficient evidence supported driver's conviction for possession of cocaine when driver sped up after a police cruiser pulled behind him, the packet of crack cocaine was not in driver's reach or line of sight, no one saw driver duck down, it was dark outside and inside the truck, and the state merely speculated that the defendant rather than the passenger placed the packet on the floor beside the transmission hump); see also *State v. Smith*, Logan App. No. 8–04–40, 2005-Ohio-3233, 2005 WL 1503954, at ¶ 7 (holding that insufficient evidence supported the defendant's conviction for possession of cocaine when officers executed a warrant on a small one-room apartment and found "large quantities of crack-cocaine" in plain view; although the defendant supplied police with a false name when they questioned him at the apartment, there was no evidence that the defendant had drugs on his person or that he had ever used cocaine).

{¶ 21} Likewise, we do not believe that the greater amount of credible evidence supports the verdict. Thus, Kingsland's conviction is also against the manifest weight of the evidence. Accordingly, we reverse the judgment below.

Judgment reversed
and cause remanded.

ABELE, P.J., concurs.

KLINE, J., concurs separately.

KLINE, Judge, concurring.

{¶ 22} I concur in judgment and opinion. I agree that Kingsland's mere presence as a passenger in the truck is not enough to conclude that he had constructive possession of any item found in the bed of the truck. See *State v. Smith*, Logan App. No. 8–04–40, 2005-Ohio-3233, 2005 WL 1503954, ¶ 7 (evidence of mere presence in a small room where drugs were located in plain view was not sufficient to prove possession). See also *State v. Hairston*, Summit App. Nos. 23663 and 23680, 2008-Ohio-891, 2008 WL 583787, ¶ 11–12. Further, I agree with the majority that Kingsland's general response ("It ain't mine * * * it ain't mine") to the officer's question is not enough to reasonably conclude that he knew what was in the back of the truck. For example, one reasonable inference is that the word "it" referred to the truck, i.e., "[The truck] ain't mine * * * [The truck] ain't mine."

{¶ 23} I write separately to discuss what an officer found stuffed between the two front seats in a box, i.e., lithium batteries (items used in the manufacture of

methamphetamine) and a mason jar with white residue in it (a by-product of methamphetamine manufacture). The evidence did not show that these items were in plain view or that Kingsland was conscious of their presence inside the truck. Thus, just as the evidence was insufficient to show Kingsland's possession of the items in the bed of the truck, the evidence was also insufficient to show that Kingsland possessed the items inside the truck. Consequently, I agree that insufficient evidence supports Kingsland's conviction of illegal assembly or possession of chemicals for the manufacture of drugs.

{¶ 24} Accordingly, I concur in judgment and opinion.