[Cite as *State v. Miller*, 2011-Ohio-6264.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96301**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs

## MYRON MILLER

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND
CONVICTION VACATED

---

Criminal Appeal from the

Cuyahoga County Court of Common Pleas
Case No. CR-535787

**BEFORE:**     Blackmon, P.J., Stewart, J., and Cooney, J.

**RELEASED AND JOURNALIZED:**     December 8, 2011

-i-

**ATTORNEY FOR APPELLANT**

John B. Gibbons
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Andrew Santoli
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Appellant Myron Miller appeals his conviction and assigns the

following errors for our review:

> **"I. The trial court erred when it denied appellant's motion
> for acquittal under Crim.R. 29 because the state failed to
> present sufficient evidence to establish beyond a**

**reasonable doubt the elements necessary to support the convictions.”**

**“II. The appellant's convictions are against the manifest weight of the evidence.”**

{¶ 2} Having reviewed the record and pertinent law, we reverse Miller's convictions. The apposite facts follow.

{¶ 3} A Cuyahoga County Grand Jury indicted Miller along with his codefendants, William Bates and LaWeldon McDowell, for three counts of drug trafficking and two counts of drug possession with juvenile specifications attached. Miller executed a written waiver of his right to a jury trial, and on November 17, 2010, a bench trial was held.

## Bench Trial

{¶ 4} The state presented the testimony of Detective John Pitts, a 20-year veteran of the Cleveland Police Department who observed the drug transaction and managed the operation. He stated that he supplied the confidential reliable informant (“CRI”) with recorded buy money, attached an electronic recording device to the informant, and dispatched him to West 101st Street and Madison Avenue.

{¶ 5} Detective Pitts testified that while keeping visual and electronic surveillance on the CRI, he observed a black male, later identified as Bates, approach the CRI on foot. Bates agreed to sell crack cocaine to the CRI;

thereafter, he ran to a white Pontiac and spoke with the driver, who was later identified as McDowell. A juvenile was seated in the front passenger's seat, and Miller was seated in the back of the car behind McDowell. When Bates spoke to McDowell, Bates was on the driver's side of the car. Bates proceeded to walk to the right rear passenger side of the car; opened the door and retrieved something from the right foot well area of the car, and returned to the CRI.

{¶ 6} Thereafter, Bates returned to the CRI and a hand-to-hand exchange took place. Detective Pitts testified that when the CRI gave the prearranged signal that the transaction had been completed, the operation's takedown unit arrived. Detective Pitts testified that Bates attempted to flee, but was apprehended within moments by the officers of the takedown unit.

{¶ 7} Lieutenant Louis Pipoly, supervisor of the First District's Vice Unit, testified that they did not have a particular target of the operation , but gave the CRI recorded buy money, instructed him to walk along the street, and engage in conversations with potential drug dealers. Lieutenant Pipoly testified that while stationed about 400 yards from the intersection of West 101st Street and Madison Avenue, he received a radio broadcast that a controlled buy had taken place. Lieutenant Pipoly testified that immediately

thereafter, he observed one of his detectives chasing a black male down Madison Avenue.

{¶ 8} Lieutenant Pipoly testified that he gave chase in his patrol car, apprehended Bates, and placed him under arrest. His unit recovered the pre-recorded buy money on the ground near Bates. Lieutenant Pipoly then met up with his surveillance unit, who had arrested Miller, McDowell, and a juvenile, R.C.[1]

{¶ 9} Detective Robert Klomfas testified that he was part of the takedown unit. He received a radio broadcast that a sale had occurred and was told to stop a late model white Pontiac G6. Detective Klomfas stopped the vehicle, which was driven by McDowell, and occupied by passengers Miller and R.C.

{¶ 10} Detective Klomfas testified that upon doing an inventory search of the vehicle, he recovered crack cocaine and marijuana under the front passenger seat, but closer towards the back. It was his opinion that the drugs were located in a position where they could not be reached by either the driver or the front seat passenger.

---

[1]The juvenile is referred to herein by his initials of his last name in accordance with this court's established policy regarding nondisclosure of identities in all juvenile cases.

{¶ 11} After the state's case in chief, Miller moved the court to acquit him under Crim.R. 29; the trial court denied his motion.

{¶ 12} McDowell testified for the defense and stated that while seated in his car with Miller and R.C., Bates approached him and told him that an individual nearby wanted $20 worth of crack cocaine. McDowell told Bates that he did not deal in drugs. McDowell denied that Bates retrieved drugs from his car.

{¶ 13} Bates also testified for the defense and stated that he was on medication for schizophrenia. Earlier that day, Bates had seen McDowell, Miller, and R.C. at the store and that he had gotten some crack cocaine from R. C. When Bates was approached by the CRI, looking to purchase drugs, he approached McDowell's car and asked R.C. if he had $20 worth of crack cocaine. Bates stated that R.C. gave him the crack cocaine, which he then sold to the CRI.

{¶ 14} Bates believed R.C. was seated in the back seat of the car. Bates stated he never went into the car to retrieve the drugs.

{¶ 15} Miller renewed his Crim.R. 29 motion for acquittal. The trial court again denied it and found Miller guilty as charged. The trial court merged the drug trafficking charges and sentenced Miller to one year in jail. The trial court also merged the drug possession charges and sentenced Miller

to one year in jail. The trial court ordered the sentences served concurrently.

## Sufficiency of Evidence

{¶ 16} In the first assigned error, Miller argues his convictions were not supported by sufficient evidence, thus, the trial court should have granted his motion for acquittal. We agree.

{¶ 17} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, Cuyahoga App. No. 95095, 2011-Ohio-1241, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶ 18} In analyzing the sufficiency issue, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965.

{¶ 19} In this case, Miller was convicted of drug possession, in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain,

possess, or use a controlled substance." Miller was also convicted of drug trafficking, in violation of R.C. 2925.03, that provides"(A) [n]o person shall knowingly * * * (1) [s]ell or offer to sell a controlled substance; [or] (2) [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

{¶ 20} Initially, it is undisputed that the controlled drug transaction took place with the aid of a CRI with drugs Bates retrieved from a vehicle in which Miller was a passenger.

{¶ 21} Detective Pitts maintained a visual and electronic surveillance of the CRI and testified that Bates approached the white Pontiac G6 after conversing with the CRI; he spoke with the driver, then walked around to the rear passenger side of that car and retrieved something from the right foot well, and returned to the CRI.

{¶ 22} Detective Klomfas stated that Miller was seated in the rear seat directly behind the driver, and the juvenile was seated in the front passenger seat. Detective Klomfas testified that the crack cocaine was recovered under the front passenger seat, but towards the back, which would have been diagonally to where Miller was seated.

{¶ 23} In its brief to this court, the state indicated that the drugs were found under the front seat immediately at Miller's feet, which would lead one to believe that the drugs were under the driver's seat. However, the record clearly established that the drugs were recovered under the front passenger's seat, diagonally from where Miller was seated in the back of the vehicle; this explains Bates walking around to the passenger side of the car to retrieve the drugs.

{¶ 24} Here, there was no evidence presented as to where Bates came from when he was approached by the CRI. There is also no indication that Detective Pitts could see into the vehicle from where he was located to be able to ascertain whether Bates retrieved the drugs from Miller, personally, or from the rear right foot well, or under the passenger seat. Specifically, Detective Pitts testified that the transaction took place around 9:00 p.m. and that the interior of the car was dark.

{¶ 25} Further, Detective Pitts testified that Bates went from the driver's side to the right rear passenger side, knelt down, and retrieved something from the rear passenger foot well. If Miller possessed the drugs as the state's theory of the case suggested, reasonable minds could conclude that Bates would not have found it necessary to go around to the right rear passenger compartment to retrieve the drugs from Miller, since Miller was

seated behind the driver. Miller could easily have handed the drugs to Bates, while Bates stood on the driver's side of the vehicle.

{¶ 26} We are mindful that possession of drugs can be either actual or constructive. *State v. Fogle*, 11th Dist. No. 2008-P-0009, 2009-Ohio-1005, ¶28, citing *State v. Rollins*, 3d Dist. No. 11-05-08, 2006-Ohio-1879, ¶22. Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession. *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶13.

{¶ 27} At best, Miller was in the vicinity of the drugs. The law is clear; mere presence in the vicinity of illicit drugs is not sufficient to prove the element of possession. *State v. Johnson*, Cuyahoga App. No. 95816, 2011-Ohio-3469, citing *Cincinnati v. McCartney* (1971), 30 Ohio App.2d 45, 281 N.E.2d 855. See, also, *State v. Haynes* (1971), 25 Ohio St.2d 264, 267 N.E.2d 787. The state has failed to prove beyond a reasonable doubt that Miller was more than a passenger in the wrong place, at the wrong time. Consequently, the trial court should have granted Miller's motion for

acquittal on both trafficking and possession of drugs. Accordingly, we sustain the first assigned error.

**{¶ 28}** Our disposition of the first assigned error renders the second assigned error moot. App.R. 12(A)(1)(C).

Judgment reversed and conviction vacated.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

MELODY J. STEWART, J.,CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS
IN JUDGMENT ONLY