[Cite as *State v. Coleman*, 2018-Ohio-1125.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 17CAA070048 |
| | : | |
| DAVID D. COLEMAN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 16 CR I 08 0397


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 26, 2018


APPEARANCES:

For Plaintiff-Appellee:              For Defendant-Appellant:

CAROL HAMILTON O'BRIEN               WILLIAM T. CRAMER
DELAWARE CO. PROSECUTOR               470 Olde Worthington Rd., Ste. 200
BRIAN J. WALTER                       Suite 200
140 N. Sandusky St., 3rd Floor        Westerville, OH  43082
Delaware, OH 43015

*Wise, John, P.J.*

**{¶1}** Appellant David D. Coleman appeals from the June 30, 2017 Judgment Entry of Sentence of Community Control of the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

**{¶2}** This case arose on May 6, 2016, around 12:32 a.m., when Ptl. Needham of the City of Delaware Police Department observed a disabled Volkswagen Jetta on the roadway at the intersection of U.S. Route 23 south and 315; smoke was coming out of the engine. Needham pulled his police vehicle in front of the Jetta and put his overhead lights on.

**{¶3}** As Needham pulled over, he saw a man standing by the car. He made eye contact with the man, later identified as appellant, and was surprised to see the man walk back to the car and get in. Needham testified that he would generally expect a driver of a disabled vehicle to approach him upon his arrival at the scene. Needham continued to watch appellant; when he was back inside the car, he appeared to be leaning back in his seat and reaching into his pants pocket. He then leaned forward with his face near the steering wheel, as though reaching for something at his feet. Appellant's furtive movements led Needham to suspect there might be a firearm or contraband in the car and to approach the car with caution.

**{¶4}** Needham spoke to appellant through the open driver's-side door. Appellant said he was having car trouble and had already called AAA. Needham ran the license plate and confirmed appellant was the owner of the car. He noticed a strong odor of marijuana emanating from the interior; appellant said he didn't have any marijuana in the

car but had smoked recently.  Needham intended to search the car based upon the odor of marijuana.

{¶5}   Needham waited for the arrival of his officer in charge, Ptl. Eusey, before he removed appellant from the car.  When appellant stepped out of the car to be secured, however, Needham immediately noticed a plastic baggie on the driver's-side floor of the car, near the edge of the seat.  Needham placed appellant in the police vehicle and went back to search the car.  He grabbed the baggie and examined it more closely, realizing it contained two separate plastic baggies.  Based on his training and experience, Needham suspected the substances inside the baggies were black tar heroin and cocaine.

{¶6}   Needham testified he was easily able to see the bag of narcotics when he looked into the car.  The baggie was on the floor and not tucked under the seat.  He could see the bag without using a flashlight.  The bag would have been under appellant's legs when appellant was seated in the car.

{¶7}   Eusey arrived on the scene and watched Needham secure appellant, but did not take part in the arrest or search of the car.  Eusey looked into appellant's car with a flashlight and also observed the plastic baggie on the driver's floor.

{¶8}   The parties stipulated the substances were tested by B.C.I. and determined to be 2.81 grams of heroin and 2.26 grams of cocaine.  Needham testified this is a significant amount of narcotics and more than he would expect to come across on a suspect for personal use.  He estimated the value of the narcotics to be around $1000. The plastic baggie on the floor was the only contraband found in the car.

{¶9}   Needham Mirandized appellant and asked about the narcotics, but appellant replied he had no idea what Needham was talking about.  Needham said

anyone getting in and out of the car would have seen the baggie on the floor. Appellant said the drugs must have come from a mechanic who recently fixed the car. He was unable to provide any contact information for the mechanic, although he provided a colorful description: a "hillbilly" friend of a friend with missing teeth and a "pot belly" known only as "Butters." Appellant said he would get back to Needham with additional information on the mechanic, and Needham provided his phone number and email to enable appellant to do so, but appellant never provided any additional information.

**{¶10}** Appellee offered a number of exhibits at trial. Exhibit 1 is the lab test result from B.C.I. Exhibits 2 through 6 are photos of the larger plastic baggie with two baggies inside, together and separate. Exhibit 8 is a dashcam video of Needham's interaction with appellant, beginning at the point when he spotted the disabled vehicle at the roadside.

**{¶11}** Appellant was charged by indictment with one count of possession of heroin pursuant to R.C. 2925.11(A), a felony of the fourth degree [Count I], and one count of possession of cocaine pursuant to R.C. 2925.11(A), a felony of the fifth degree [Count II]. Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty as charged and sentenced to a term of 5 years on community control.

**{¶12}** Appellant now appeals from the trial court's June 30, 2017 Judgment Entry of Sentence of Community Control.

**{¶13}** Appellant raises two assignments of error:

## ASSIGNMENTS OF ERROR

{¶14} "I.  APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS WERE VIOLATED BY A CONVICTION THAT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶15} "II.  APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

## ANALYSIS

### I., II.

{¶16} Appellant's two assignments of error are related and will be considered together.  He asserts his convictions for possession of heroin and cocaine are against the manifest weight and sufficiency of the evidence.  We disagree.

{¶17} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶18}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶19}** Appellant was convicted upon two counts of drug possession pursuant to R.C. 2925.11(A)(1), which states, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." The parties in the instant case stipulated that the substances in the baggies found in appellant's car consisted of 2.8 grams of heroin and 2.26 grams of cocaine.

**{¶20}** Appellant argues that although he was in proximity to the contraband, he had no knowledge of it and appellee failed to establish he was conscious of the presence of the contraband in his car. A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person has knowledge of circumstances when the person is aware that such circumstances probably exist. *Id.* "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. R.C. 2925.01(K).

Appellant argues the jury improperly inferred knowledge and dominion "from the sole fact that the drugs were found under [his] seat." We find, though, that the circumstances fully support appellant's knowledge of the drugs in his car.

**{¶21}** We first note Needham expressly testified the drugs were not under the seat, but on the floorboard where the baggie would have been immediately visible to the driver entering or exiting the car. T. 99. The baggie was directly under appellant's legs, not under the seat. T. 99. Eusey also testified that he observed the baggie on the floor of the driver's seat. Needham asked appellant at the roadside and later in the encounter what he was "messing around with" on the floor, and appellant claimed he dropped his hard drive onto the floor. Especially if this statement was true, appellant would have been aware of the baggie on the floor directly under his legs.

**{¶22}** Appellant points us to *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), in which the Fourth District found proximity alone does not equate to dominion:

> * * *. Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. [Citation omitted.] Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession. *State v. Riggs*, [4th Dist. Washington No. 98CA39, 1999 WL 727952 (Sept. 13, 1999)].

**{¶23}** We find that the instant case involves just such other factors probative of appellant's dominion or control over the drugs, in addition to the uncontroverted testimony of Needham and Eusey about the obvious location of the baggie in the car. Needham testified appellant's movements inside the car were furtive; he appeared to reach into his pocket and his face was near the steering wheel as he reached around near his feet. Twice appellant acknowledged he was reaching around his feet and claimed he was looking for his hard drive. To the officer, appellant denied knowledge of the drugs and claimed that a mechanic must have left the contraband in the car, describing the mechanic as a "hillbilly" with missing teeth and a "pot belly" named Butters. Despite this extraordinary description, appellant was unable to provide the full name or any location of the mechanic. Moreover, as Needham pointed out to appellant, the amount of drugs involved here, and the high value, make it unlikely someone would have dropped the drugs into appellant's car and forgotten about them.

**{¶24}** Upon viewing the evidence in the light most favorable to appellee, we find the record to be replete with evidence upon which the trier of fact could have found the essential elements of drug possession proven beyond a reasonable doubt. We also find that the jury did not lose its way in considering the evidence and did not create a manifest miscarriage of justice. Appellant's two assignments of error are overruled.

## CONCLUSION

{¶25} Appellant's two assignments of error are overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.


By:  Wise, John, P.J.

Baldwin, J., and

Wise, Earle E., concur.