[Cite as *State v. Morrison*, 2021-Ohio-3297.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| SHAWN MORRISON, | : | Case No. 2021 CA 0020 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:             Appeal from the Licking County
                                     Court of Common Pleas, Case No.
                                     20CR1034

JUDGMENT:                            Affirmed

DATE OF JUDGMENT:                    September 20, 2021

APPEARANCES:

For Plaintiff-Appellee                       For Defendant-Appellant

WILLIAM C. HAYES                             WILLIAM T. CRAMER
Licking County Prosecutor                    470 Olde Worthington Road, Suite 200
                                             Westerville, Ohio 43082
By: PAULA M. SAWYERS
Assistant Prosecuting Attorney
20 S. Second Street
Newark, Ohio 43055

*Baldwin, J.*

**{¶1}**   Appellant, Shawn Morrison, appeals the verdict of the jury in the Licking County Court of Common Pleas, finding him guilty of Aggravated Possession of Controlled Substances (Methamphetamine), a violation of 2925.11(A),(C)(1)(a) and a felony of the fifth-degree.

## STATEMENT OF FACTS AND THE CASE

**{¶2}**   On December 30, 2019, Detective Sergeant Alan Thomas of the Licking County Sheriff's Department began drug surveillance at 193 West Church Street, an address at which the Sheriff's Office had conducted controlled buys of narcotics, when he noticed a large pickup truck parked in front.  Thomas parked in a location that permitted him to see people entering and leaving 193 West Church Street and, after thirty minutes, he noticed a white male, later identified as Morrison, leave the residence and drive off in the pickup truck. He saw that the license plate light was not illuminated, a traffic offense that warranted stopping the truck. Thomas followed Morrison in an unmarked car, radioed Detective Justin Woodyard and relayed the information regarding the truck.

**{¶3}**   Detective Woodyard was nearby when he received the call from Thomas. Woodyard responded in a marked cruiser and stopped the pickup truck.   Thomas continued a distance and parked to observe the interaction between Woodyard and Morrison.  He also contacted the Sheriff's Office and requested that they send another officer to the scene.

**{¶4}**   Woodyard approached the passenger side of the vehicle and, because the vehicle was very high off the ground, he asked Morrison if he could open the passenger door to allow them to see each other as they talked.  Woodyard asked for Morrison's

driver's license and noticed that Morrison's hands were visibly shaking as he looked through the center console and around the interior of the vehicle for his license. Woodyard believed the shaking was not normal for a simple traffic stop.

{¶5} Because Morrison was visibly shaking and fidgety and could not locate his driver's license, Woodyard asked him to step outside the vehicle to talk. After they walked back to Woodyard's cruiser, Woodyard requested permission to search Morrison's person and he agreed. Before searching Morrison, he asked if he had any illegal drugs or anything illegal in his pockets and Morrison responded that he did not.

{¶6} In the right pocket, the officer discovered a money clip/knife combination that contained Morrison's driver's license. In the left pocket he saw a plastic baggy, a round, multi-colored, rubbery pouch and cut straws. Woodyard recognized the straws as something often used to ingest illegal narcotics.

{¶7} Woodyard noticed that Morrison was still nervous and fidgety during the search. When Woodyard asked about the items in Morrison's left pocket, Morrison claimed that the officer had put them in his pocket. After hearing the accusation and noticing Morrison continued nervous state, Woodyard decided to place Morrison in hand cuffs to insure his own safety. Before he could place the cuffs, Morrison fled. Woodyard followed, and then noticed that Detective Thomas saw Morrison flee and that Thomas was pursuing him. Woodyard returned to Morrison's vehicle and secured it, then drove his cruiser to where he last saw Morrison pursued by Thomas.

{¶8} Thomas saw Morrison run from Woodyard, pursued him, and knocked him to the ground. Because he had no handcuffs, Thomas restrained Morrison by laying on him until assistance arrived. Morrison kept his hands beneath his body and, concerned

that he may have a weapon, Thomas ordered him to put his hands behind his back, but Morrison did not comply.

{¶9} Woodyard arrived in his patrol car and found Morrison on the ground with Thomas on top of him, restraining his movement. Woodyard and Thomas secured Morrison, and, after they removed him from the ground, Woodyard noticed a small plastic bag on the ground that looked like the bag he had seen in Morrison's pocket during the search. He also found the cut straws and the round, rubbery, multi-colored pouch he discovered during the search of Morrison.

{¶10} The Sheriff's Office sent the contents of the plastic bag to the Central Ohio Regional Crime Lab for identification. That Lab analyzed the contents of the plastic baggy and determined that it contained 1.09 grams of methamphetamine. The pouch found in Morrison's pocket contained what was referenced by the parties as "marijuana dabs."

{¶11} Morrison was charged with Aggravated Possession of Controlled Substances (Methamphetamine), 2925.11(A),(C)(1)(a), felony of the fifth-degree. The case was presented to a jury on January 6, 2021 and Morrison testified. He explained that he told the officer that he had just come from a friend's home, but admitted at trial that was not true. Instead, he explained that he had come from 163 West Church Street after answering a solicitation for sex. When he was stopped he was concerned that he might be cited for soliciting sex or having the marijuana dabs, and he claimed this fear prompted him to run. He denied any knowledge of the methamphetamine that was found, and could not explain how the plastic bag containing methamphetamine came to be in his pocket.

{¶12} During cross-examination, Morrison admitted that he lies when he is faced with trouble. On re-direct, when asked by his attorney whether he always lied every time he was in trouble, Morrison admitted that he did.

{¶13} The jury returned a guilty verdict and the court imposed a sentence of Community Control for three years and ordered Morrison to enter and successfully complete an approved community-based correctional facility program.

{¶14} Morrison filed a timely appeal and submitted a single assignment of error:

{¶15} "I. THE CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

## STANDARD OF REVIEW

{¶16} When reviewing a weight of the evidence, the appellate court functions as the "thirteenth juror" and reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the convictions." *Id.*

## ANALYSIS

{¶17} In his sole assignment of error, Morrison contends that his sentence was against the manifest weight of the evidence because he did not know that he possessed the amphetamine. The fact that he admitted that he was soliciting sex and possessed marijuana was offered as a testament to his credibility in support of his contention that he

was unaware that he had methamphetamine in his pocket.  Though not expressly stated, Morrison invites us to conclude that his story should be accepted and the testimony of the state's witnesses regarding the discovery of the methamphetamine should be discounted. Morrison is asking us to assign greater weight and credibility to his version of the facts.

**{¶18}**  The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967) paragraph one of the syllabus as quoted in *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942): *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶19}**  The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true." *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21 quoting *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889 quoting *State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992) Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

**{¶20}**  Morrison was charged with possession of methamphetamine, a violation of R.C. 2925.11(A) and a fifth-degree felony. R.C. 2925.11(C)(1)(a).  The statute states that "no person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."  Morrison does not contend that the material in the bag was not a

controlled substance, nor does he directly state that the bag was not in his pocket, but he claims that he did not know that he possessed methamphetamine. "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself. Because the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proven by direct testimony of another person but must be determined from the surrounding facts and circumstances. (Citations omitted.) *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695, 701 (1st Dist. 2001).

{¶21} In this case the focus is upon Morrison's knowing, actual possession of methamphetamine. "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, ¶ 13, 895 N.E.2d 633 (4th Dist.), quoting State v. Fry, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490,492, 1998-Ohio-193, 696 N.E.2d 1049 (1998); accord *State v. Corson,* 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 13.

{¶22} After review of the record, we find sufficient evidence from which the jury could determine that Morrison knowingly possessed methamphetamine. The narcotic was found in his possession shortly after he left a residence where narcotics had been purchased by the authorities as part of an investigation. The jury had the opportunity to view the cruiser video of the search of Morrison and could find that it did not show the officer placing the drug in his pocket. Further, Morrison's actions and statements provide

a basis for a reasonable juror to doubt his protestation of innocence.  He lied to the officer when he told him that he had just left a friend's home.  He lied to the officer when he denied that he had any drugs on his person. During his testimony he admitted that he lied when faced with the consequences of his actions, and, when his counsel attempted to limit his admission, he stated that he always lied when he was in trouble. Finally, the jury may have interpreted his flight from Woodyard as exhibiting a consciousness of guilt.

**{¶23}** We find that this is not an 'exceptional case in which the evidence weighs heavily against the conviction.' *Thompkins*, *supra* at 387.  The jury neither lost his way nor created a miscarriage of justice in convicting Morrison.

**{¶24}** Morrison's assignment of error is denied and the decision of the Licking County Court of Common Pleas is affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Delaney, J. concur.