[Cite as *State v. Shirley*, 2017-Ohio-1520.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA3562 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| DOUGLAS T. SHIRLEY, | : | |
| Defendant-Appellant. | : | RELEASED 04/21/2017 |

<u>APPEARANCES</u>:

Christopher T. Junga, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Hoover, J.

{¶1}    Defendant-appellant, Douglas T. Shirley ("Shirley"), appeals from his conviction in the Ross County Common Pleas Court following a jury trial. Shirley was convicted of escape, a felony of the second degree, in violation of R.C. 2921.34. On appeal, Shirley contends that his conviction is against the manifest weight of the evidence, or in the alternative, is not supported by sufficient evidence. After a careful review of the record, we conclude that both of Shirley's assignments of error are without merit. Accordingly, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶2}    On March 18, 2015, while being detained at the Ross County jail on a felony possession of heroin charge, Shirley was involved in an apparent medical emergency. On that date, Shirley was found lying on the floor of the jail; and it appeared that he had a seizure and hit

his head. Jail staff contacted the fire department; and Shirley was transported to Adena Regional Medical Center (hereinafter "Adena") for treatment. Deputy Ronnie Johnson of the Ross County Sheriff's Office accompanied Shirley in the emergency squad and at Adena because Shirley was still being held on the felony possession of heroin charge; he had never posted bond.

{¶3}    While Shirley was at Adena, Sargent James Bridenbaugh of the Ross County Sheriff's Office contacted the county prosecutor to obtain a temporary medical furlough. Sargent Bridenbaugh requested the temporary medical furlough because the Ross County Sheriff's Office did not have enough officers to guard Shirley at Adena. Once the temporary medical furlough was granted by the Ross County Common Pleas Court, Sargent Bridenbaugh gave a "Furlough Acknowledgment Form" to Sargent Lawrence Stinson of the Ross County Sheriff's Office to take to Adena. Shirley signed the "Furlough Acknowledgment Form" on March 18, 2015, while at the hospital. The form explicitly stated that Shirley was to return to the jail upon his release from the hospital. On the bottom left-hand corner of the form, dated 3/18/2015 at 15:37, under Shirley's signature line, the form states: "must return once discharged or escape charges will be filed." After the "Furlough Acknowledgment Form" was fully executed and explained to Shirley, Deputy Johnson and Sargent Stinson left Adena.

{¶4}    On March 19, 2015, Shirley was discharged from Adena, but he did not return to the Ross County jail. He was later arrested, after a brief foot pursuit, on October 2, 2015, in Chillicothe, Ohio. At the time of his arrest, Shirley gave a false name and social security number to police officers.

{¶5}    On February 5, 2016, Shirley was indicted in the case sub judice on one count of escape, a felony of the second degree in violation of R.C. 2921.34. Shirley pleaded not guilty to the escape charge; and the matter proceeded to a jury trial.

{¶6}     In its case-in-chief, the State called five witnesses: all law enforcement officers.

{¶7}     Sargent Stinson testified that he first contacted Shirley on March 18, 2015, at the Adena emergency room. At that time he delivered and administered the "Furlough Acknowledgment Form" to Shirley and in the presence of Deputy Johnson. Sargent Stinson testified that Shirley appeared to be alert and awake. He also described Shirley as "jovial" and "relaxed". Sargent Stinson testified that he read the "Furlough Acknowledgment Form" to Shirley, and also verbally informed him that he needed to return to the jail upon his release from the hospital, or face a possible escape charge. Sargent Stinson stated that Shirley verbally acknowledged his warnings and indicated he understood the form. Sargent Stinson also testified that he watched Shirley sign the "Furlough Acknowledgment Form"; and that before leaving, he provided Shirley with a copy of the form and again reminded Shirley that he needed to immediately return to the jail upon his discharge from Adena. On cross-examination, Sargent Stinson testified that he did not confer with the doctors or nurses at Adena about Shirley's condition prior to delivering and administering the form, or ask about any medication Shirley may have taken.

{¶8}     Deputy Johnson testified that he first encountered Shirley on the date of the medical incident just prior to Shirley being transported to Adena; and he accompanied Shirley in the ambulance. Deputy Johnson testified that Shirley was coherent in the ambulance, and was able to answer questions from the squad members and him. Deputy Johnson testified that he stayed with Shirley at the hospital until Sargent Stinson arrived with the "Furlough Acknowledgment Form". According to Deputy Johnson, while at the hospital, Shirley "seemed to be coherent", and was answering questions and carrying on conversations with the medical staff. Deputy Johnson also corroborated Sargent Stinson's earlier testimony, noting that Sargent

Stinson read Shirley the "Furlough Acknowledgement Form" and verbally told Shirley that if he did not return to the jail immediately following his release from the hospital, escape charges would be filed against him. Deputy Johnson also witnessed Shirley sign the form and verbally acknowledge that he understood the form. Deputy Johnson stated that a copy of the form was left with Shirley. On cross-examination, Deputy Johnson testified that he did witness medical staff give Shirley an IV; but he did not know the contents of the IV; and he did not ask any of the medical staff about Shirley's condition.

{¶9}    Officer Andrew Newsome of the Chillicothe Police Department testified that he encountered Shirley on October 2, 2015, while responding to complaints of a possible fight at the McDonald's restaurant in Chillicothe, Ohio. While at the scene, Shirley began to run away from officers who had tried to initiate a traffic stop. Officer Newsome eventually located Shirley hiding under a porch at a nearby house. According to Officer Newsome, when Shirley was handcuffed he gave the arresting officer a false name and social security number. The officers quickly learned that the given name and social security number were false and arrested Shirley. When Shirley was taken to jail, jail personnel identified him and it was learned that Shirley had active warrants for his arrest.

{¶10}   The State also introduced four exhibits that were admitted as part of the evidence including, inter alia: a copy of the fully executed "Furlough Acknowledgement Form" and a certified copy of Shirley's medical records from the Adena visit. Of particular note, the first page of Shirley's discharge summary record from Adena notes that he was diagnosed with acute right-sided weakness, most likely due to malingering. Specifically, the record reads as follows:

> This patient is a 27-year-old, black male, who was in jail, who apparently
>
> developed an acute weakness of the right arm and right leg. He was brought to the

emergency room for evaluation. Initial eval in the emergency room was negative other than the right-sided weakness. He was referred to the hospitalist service for further workup.

Dr. Wagner of the hospitalist service certainly was suspicious that the patient was feigning his symptoms as his exam was inconsistent. Nonetheless, he suggested getting an MRI of the brain, but we were unable to get that because the patient has metal in his right lower extremity from a previous gunshot wound. He therefore consulted Dr. Akhtar of Neurology. Dr. Akhtar evaluated the patient and agreed that his symptoms were inconsistent with a stroke. The patient made a "miraculous" recovery within 24 hours, likely after he learned that he was not going to be kept in the hospital with guards, but instead was told that after discharge he needs to report himself back to jail on his own recognizance. That may have stirred him on to make a significant improvement as he had no neuro deficits when I evaluated him on the day of discharge. The CAT scan did not reveal any abnormality that would have explained such a weakness. He claimed that he was unable to urinate on his own, but when we told him we had to put a Foley catheter in, he was suddenly able to urinate fully.

This patient does not need to be in the hospital!

{¶11} In his defense, Shirley testified on his own behalf. Shirley testified that on March 18, 2015, while working out in the jail gymnasium, he became light headed and blacked out. When he came to he was on the floor of the gymnasium; but he could not remember how he had gotten there. According to Shirley, while he was in the ambulance being transported to Adena, a

nurse told him he had suffered a stroke. When he arrived at Adena, Shirley claims that he was intravenously given morphine. Shirley testified that he does not do drugs, so the painkiller "relaxed" him and "immediately sedated" him. Shirley indicated that the morphine caused him to fall into and out of sleep, and that after waking up following a CAT scan procedure, a sheriff deputy had him sign some papers. Shirley testified that he was still "drowsy and foggy" when he signed the papers, and that he thought he was signing an own recognizance form so he could be released from confinement and continue treatment. Shirley did remember a deputy reading him the form; but he claims that he did not understand it given his condition. In his exact words, Shirley testified: "I thought the form was they was releasing me and to sign it so I don't get escape charges brought against me. That's what I got out of the form that they had me sign." Shirley testified that when he was released from Adena, he went home under the impression that he had been released on his own recognizance. Shirley testified that about a month after his release from Adena he found out that there was a warrant for his arrest on the felony drug possession charge; but denied ever knowing there was a warrant for escape charges. He also did not immediately turn himself into authorities because, according to his testimony, he was trying to earn money to pay for legal representation. On the night of his arrest in October 2015, Shirley claims that he was "very intoxicated" and does not remember running from the police.

{¶12} Shirley also testified on direct and cross-examination in regards to his criminal history, which includes convictions for complicity to drug trafficking, drug possession, weapons violations, robbery, and receiving stolen property.

{¶13} Upon the completion of the presentation of evidence, closing arguments, and final instructions, the jury returned a guilty verdict. The trial court sentenced Shirley to a prison term

of five years to be served consecutively to the sentence he received in the drug possession case. Shirley appealed following entry of his sentence.

## II. Assignments of Error

{¶14} Shirley assigns the following errors for our review:

First Assignment of Error:

The verdict was against the manifest weight of the evidence.

Second Assignment of Error:

The evidence was insufficient to sustain a verdict of guilty.

## III. Law and Analysis

{¶15} Because Shirley's assignments of error are interrelated, we address them jointly. Shirley argues that his escape conviction is against the manifest weight of the evidence, or alternatively, not supported by sufficient evidence, because the record does not support the conclusion that he knew he was under detention, or was reckless in that regard, when he failed to return to the jail following his discharge from Adena. For the following reasons, we disagree.

{¶16} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell,* 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Kirkland,* 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 132.

{¶17}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014–Ohio–1941, ¶ 23. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *Id.* We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to view the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*

{¶18}  For the escape charge, the State had to present evidence that Shirley "knowing [he was] under detention, other than supervised release detention, or being reckless in that regard, * * * purposely [broke] or attempt[ed] to break the detention, or purposely fail[ed] to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." R.C. 2921.34(A)(1).

{¶19}  "A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid

learning the fact." R.C. 2901.22(B). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶20} In the case sub judice, the State's evidence presented at trial supported the jury's conclusion that Shirley knew he remained under detention when he was released from the hospital, or at the very least, was reckless in that regard. Of note, Deputy Johnson, who was with Shirley from the time he was transferred from jail to the time the "Furlough Acknowledgement Form" was administered to Shirley at the hospital, testified that Shirley was coherent and able to answer questions from medical staff during the entire ordeal. Likewise, Sargent Stinson testified that Shirley was alert and awake when the "Furlough Acknowledgment Form" was read to him. Both of the officers testified that the "Furlough Acknowledgment Form" was read to Shirley, and that Shirley verbally acknowledged his understanding of the form. Both officers also stated that Shirley was verbally warned that if he did not return to the jail following his discharge from the hospital, escape charges would be filed against him. The form itself explicitly states that the temporary medical furlough terminates immediately upon release from hospitalization, and upon termination of the furlough, Shirley was to immediately return to the custody of the Ross County Sheriff's Office. Directly below the signature line of the form is a notation, clearly stating that escape charges will be filed if the inmate does not return upon discharge. Shirley signed the form in the presence of Sargent Stinson and Deputy Johnson, and a copy of the form was left with Shirley.

{¶21} Moreover, the discharge summary record and Shirley's actions upon his later encounter with law enforcement, provide some indication that Shirley knowingly and purposefully broke detention. For instance, the Adena healthcare providers noted their

suspicions that Shirley was "feigning his symptoms" and malingering. The medical record notes Shirley's "miraculous" recovery after learning that the law enforcement officers would no longer be supervising the hospital visit. Finally, the discharge summary report noted that Shirley had "no neuro deficits" when evaluated on the day of discharge. Certainly, the jury was capable of concluding that Shirley could read and understand the "Furlough Acknowledgment Form" by the time he was released from Adena.[1] Furthermore, the jury could have concluded that Shirley's evasive and suspicious behavior upon his October 2015 encounter with law enforcement was not merely a drunken misunderstanding; but rather, an indication that Shirley knew he had unlawfully fled from authorities following his release from Adena.

{¶22}  Although Shirley testified that he was "drowsy and foggy" when he read the "Furlough Acknowledgment Form", and that he did not understand the form, the jury was free to believe all, part, or none of his testimony. *West*, *supra*, at ¶ 23; *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 29. Moreover, when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the testimony presented by the State. *State v. Tyson*, 4th Dist. Ross No. 12CA3343, 2013-Ohio-3540, ¶ 21.

{¶23}  The jury had before it sufficient evidence to conclude that Shirley knew he was under detention when he was released from Adena and failed to return to the county jail, or was at least reckless in disregarding that fact. Moreover, the jury apparently found the State's version of events more credible than Shirley's; and they were free to do so. This is not an exceptional case where the evidence weighs heavily in favor of the defendant and where it is clear that the jury lost its way or created a manifest miscarriage of justice. Accordingly, we overrule Shirley's first and second assignments of error.

---

[1] There was no testimony or indication that Shirley is illiterate.

## IV. Conclusion

{¶24}  Having overruled both of Shirley's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J., and Abele, J.: Concur in Judgment and Opinion.

For the Court

By: _____
Marie Hoover, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**