[Cite as *State v. McKenzie*, 2017-Ohio-7366.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 16CA23 |
| v. | : | |
| | | DECISION AND |
| DONALD MCKENZIE, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED: 08/22/2017 |

APPEARANCES:

Bryan Hicks, Lebanon, Ohio for Appellant.

Anneka Collins, Highland County Prosecuting Attorney, and James Roeder, Assistant Highland County Prosecuting Attorney, Hillsboro, Ohio for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Donald McKenzie, appeals the judgment of the Highland County Court of Common Pleas convicting him of possessing chemicals used to manufacture methamphetamine in violation of R.C. 2925.041(A), a felony of the third degree. On appeal, McKenzie argues that his conviction is supported by insufficient evidence, or alternatively, is against the manifest weight of the evidence.

{¶ 2} McKenzie claims that the record does not support the conclusion that he possessed the chemicals. He essentially argues that the State's key witness is not credible and without her testimony, no evidence exists that he had any involvement or knowledge of what was happening.

{¶ 3} In addition, McKenzie argues that the jury lost its way. He contends that this is demonstrated through the findings of the jury that he possessed the chemicals, but nonetheless

found that his truck (which contained the chemicals) was not subject to forfeiture. He claims that the verdicts are inconsistent.

{¶ 4} Upon review of the record, we conclude that McKenzie's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. The State presented testimony that, if believed, supports McKenzie's conviction; and this is not an exceptional case where the evidence weighs heavily in favor of McKenzie and where it is clear that the jury lost its way or created a manifest miscarriage of justice.

{¶ 5} Accordingly, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 6} On May 3, 2016, a Highland County Grand Jury indicted McKenzie on one count of possessing chemicals used to manufacture methamphetamine in violation of R.C. 2925.04(A), a felony of the third degree, and an attendant forfeiture specification. The charge arose after police found pseudoephedrine, ammonium nitrate pellets, and lithium inside McKenzie's truck during a traffic stop.

{¶ 7} On September 12, 2016, the case proceeded to trial where the following evidence was presented, in relevant part:

{¶ 8} On December 29, 2016, Deputy Vincent Antinore of the Highland County Sherriff's Office was on routine patrol in Highland County when he passed a Ford F-150 truck with a poorly lit license plate. He turned around and confirmed that the plate was not properly lit and then initiated a routine traffic stop.

{¶ 9} Deputy Antinore approached the car and requested identification from the occupants. The passenger, later identified as Kaitlyn Webb, immediately got out of the truck and admitted that she had an outstanding warrant. By that time, Detective Chris Bowen of the

Highland County Sheriff's Office had arrived on the scene. Detective Bowen placed Webb under arrest and put her in the back of his cruiser.

{¶ 10} Meanwhile, Deputy Antinore asked the driver, later identified as McKenzie, where he and Webb were coming from and where they were going. McKenzie stated that they were coming from his sister's house on Heathermore Trail; and they were going to his mother's house on Dundee Drive. Deputy Antinore thought this was odd because "the location we were at on North Bend Road from where he said he was coming from on Heathermore, it would not make sense for him to be on North Bend Road, because Dundee, where he was supposedly headed was parallel to where he was at."

{¶ 11} As they were talking, Deputy Antinore noticed something covered-up on the floor of the front seat. When he returned to his cruiser to run McKenzie's information, he asked Webb about the item; and Webb indicated that it was a bag containing chemicals. Deputy Antinore returned to the truck and ordered McKenzie out of the car. McKenzie denied knowing what was in the bag and said that Webb had put the bag in the truck. Deputy Antinore told McKenzie that he was free to leave but that his truck was going to be detained.

{¶ 12} Before leaving, McKenzie asked Deputy Antinore if he could get a few things out of his truck. Deputy Antinore and Detective Brown accompanied McKenzie to the truck where McKenzie "cautiously" removed a book from underneath the covered-up bag. In doing so, the bag fell over; and several bottles of chemicals fell out, some of which were leaking.

{¶ 13} Suspecting that there may be an active meth lab in the truck, Deputy Antinore and Detective Bowen searched the truck. The bag contained a bottle of Coleman fuel, a bottle of muriatic acid, a bottle of Crystal drain opener, an ice compress, a package of "Damper It", and clear plastic tubing. The passenger compartment contained a plastic baggy containing a white

substance, later identified as 13.45 grams of pseudoephedrine, two lithium batteries, and a receipt showing that McKenzie had purchased some batteries several days earlier.

{¶ 14} According to Deputy Antinore and Detective Bowen, McKenzie's truck contained nearly everything needed to manufacture methamphetamine. Detective Bowen explained,

There are many different * * * ways of producing methamphetamine. The one-pot method basically consists of a soda bottle. You place ephedrine, uh, sodium hydroxide, which is a crystal drain opener, lithium batteries, solvents. All these ingredients go into one bottle and, each chemical reacts with another chemical, and each chemical has its own function and job. Uh, basically what it does is it produces meth oil. Then there is a separate phase. Once meth oil is created, you have to use acid and Damper It which creates hydrochloric gas. You drip hydrochloric gas into the meth oil to solidify it to make it a useable solid form.

* * *

Lithium batteries is used in the reaction phase in the one-pot. Uh, ammonium nitrate pellets and sodium hydroxide, which is the drain cleaner, those two items react inside the soda bottle to create ammonia gas. Ammonia gas is needed to break down the lithium, which the end result is solvated electrons are produced, and when those are produced, that's what produces methamphetamine.

* * *

Coleman Fuel is used as a solvent in the production of methamphetamine. What that does, it extracts the ephedrine from pseudoephedrine. * * * Muriatic acid is used in the slating out phase, that is the last phase. That's when I spoke earlier of solidifying the meth oil into useable form. That's what the acid helps do in this

process. Crystal Heat * * * this is the base. What drain opener does, it's added in the one-pot, and it is mixed with, uh, it produces the ammonia gas. With the ammonia nitrate pellets, it produces ammonia gas. * * * The cold packs contain ammonia nitrate pellets. The ammonia nitrate pellets is also a product used to create ammonia gas. * * * Damper It is a substitute for salt, that's mixed in with the acid in the salting out phase to create hydrochloric acid. * * * The tubing is used in the process, uh, typically its glued on to the end of bottle caps. And the tubing is used when they drip the hydrochloric gas into the meth oil that solidifies it. Basically, the hydrochloric gas travels through this tube, and they drip that into the meth oil, and that's how it solidifies it.

* * *

[Pseudoephedrine is] very important. It's a huge factor in producing methamphetamine. And without it, you can't produce methamphetamine.[1]

Trial Tr., p. 60-71.

{¶ 15} Several witnesses also testified about the days and hours leading up to the traffic stop. According to Webb, on the day of the traffic stop, she texted her friend, T.J. Barney, and asked him for a ride. McKenzie and Barney picked her up in a black truck. From there, the three went to Donna McKenzie's house on Lois Lane and dropped Barney off. She and McKenzie then went to McKenzie's mother's house on Dundee Street where McKenzie began gathering items in a purple bag. She did not know exactly what McKenzie was putting in the bag; but she assumed he was gathering items to cook methamphetamine because their plan was to go back to Lois Lane and cook it. When McKenzie was finished gathering materials, he asked Webb to take the

---

[1] Detective Bowen was declared an expert in the identification and dismantling of methamphetamine labs.

bag to the truck; and she did. He also asked her to cover-up the bag when they got pulled over by police.

{¶ 16} Webb admitted that the day before the traffic stop, she met Barney to see about cooking methamphetamine; and at that time, she had pseudoephedrine with her. However, she maintained that she gave her supply of pseudoephedrine away and that the pseudoephedrine and other items found in McKenzie's truck were not hers.[2]

{¶ 17} According to Barney, when he met Webb the day before the traffic stop to cook methamphetamine, Webb had pills and a light blue or purple bag containing all the necessary chemicals. Donna McKenzie, McKenzie's sister, also testified that Webb had the bag the day before the traffic stop. According to her, Webb came to her mom's house the day before the traffic stop and asked her for a ride. She then drove Webb to Adams Road where Webb picked up the purple bag and put it in the trunk of the car. When the two got back to the house, Webb took the bag and left. Teresa McKenzie, McKenzie's other sister, recalled seeing Webb with the purple bag the following day, when Webb arrived at her mother's house.

{¶ 18} Ultimately, the jury found McKenzie guilty of possessing chemicals used to manufacture methamphetamine. However, it found that his truck was not subject to forfeiture. McKenzie was sentenced to 36 months in prison.

{¶ 19} He timely appeals.

## II. Assignments of Error

{¶ 20} McKenzie presents the following assignments of error for our review:

Assignment of Error No. I:

THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

---

[2] Webb also pleaded guilty to possessing chemicals for the manufacturing of methamphetamine and agreed to testify truthfully at McKenzie's trial. According to Webb, McKenzie offered her money to "take the fall for everything."

Assignment of Error No. II:

> THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### III. Law and Analysis

{¶ 21} Because McKenzie's assignments of error are interrelated, we address them jointly. McKenzie argues that his conviction is not supported by sufficient evidence, or alternatively, is against the manifest weight of the evidence, because the record does not support the conclusion that he possessed the chemicals. We disagree.

{¶ 22} Whether a conviction is supported by sufficient evidence is a question of law that we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. Allah*, 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, ¶ 8. In making this determination, we must determine whether the evidence adduced at the trial, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Davis,* 4th Dist. Ross No. 12CA3336, 2013–Ohio–1504, ¶ 12. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.,* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 23} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678

N.E.2d 541 (1997); *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

"Although a court of appeals may determine that a judgment of a trial court is sustained by

sufficient evidence, that court may nevertheless conclude that the judgment is against the weight

of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be

determined by the trier of fact. *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶

23. A trier of fact "is free to believe all, part or none of the testimony of any witness who appears

before it." *Id.* We defer to the trier of fact on these evidentiary weight and credibility issues

because it is in the best position to gauge the witnesses' demeanor, gestures, and voice

inflections, and to use these observations to weigh their credibility. *Id.*

{¶ 24} R.C. 2925.041(A) provides, "No person shall knowingly assemble or possess one

or more chemicals that may be used to manufacture a controlled substance in schedule I or II

with the intent to manufacture a controlled substance in schedule I or II in violation of section

2925.04 of the Revised Code." Thus, R.C. 2925.041(A) consists of the following elements: (1)

knowingly, (2) assemble or possess (3) chemicals that may be used to manufacture a schedule 1

or schedule II controlled substance, and (4) intent to manufacture a schedule 1 or schedule II

controlled substance. *State v. Creech,* 188 Ohio App.3d 513, 2010–Ohio–2553, 936 N.E.2d 79, ¶

20. Methamphetamine as a schedule II controlled substance. R.C. 3719.41, Schedule II, (C)(2).

{¶ 25} "A person acts knowingly, regardless of his purpose, when he is aware that his

conduct will probably cause a certain result or will probably be of a certain nature. A person has

knowledge of circumstances when he is aware that such circumstances probably exist." R.C.

2901.22(B). "Because knowing precisely what existed in a defendant's mind at the time of the

wrongful act may be impossible, the trier of fact may consider circumstantial evidence, i.e., the

facts and circumstances surrounding the defendant's wrongful act, when determining if the

defendant was subjectively 'aware that his conduct will probably cause a certain result or will probably be of a certain nature.' " *State v. Chambers*, 4th Dist. Adams No. 10CA902, 2011-Ohio-4352, ¶ 36, quoting R.C. 2909.22(B).

{¶ 26} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989); *State v. Fry,* 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39.

{¶ 27} "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession." *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *Fry* at ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), paragraph one of the syllabus; *State v. Brown,* 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, ¶ 19. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id.*

{¶ 28} " 'With regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that "intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof." ' " *State v. Moon,* 4th Dist. Adams No. 08CA875, 2009–

Ohio–4830, ¶ 20, quoting *State v. Wilson,* 12th Dist. Warren No. CA2006–01–007, 2007–Ohio–

2298, ¶ 41, quoting *State v. Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995).

Accordingly, "[i]ntent must often * * * be inferred from the act itself and the surrounding

circumstances, including the acts and statements of the defendant surrounding the time of the

offense." *Id.,* quoting *Wilson* at ¶ 41*,* citing *State v. Hutchinson*, 135 Ohio App.3d 459, 463, 734

N.E.2d 454 (12th Dist.1999).

{¶ 29} McKenzie contends that his conviction is based on insufficient evidence because

Webb is not credible and without her testimony, no evidence exists that he had any involvement

or knowledge of what was happening. "Questions of witness credibility are irrelevant to the issue

of whether there is sufficient evidence to support a conviction, however." *State v. Ruark*, 10th

Dist. Franklin No. 10AP-50, 2011-Ohio-2225, ¶ 24, citing *State v. Preston–Glenn,* 10th Dist.

Franklin No. 09AP–92, 2009–Ohio–6771, ¶ 38. "In determining whether a conviction is based

on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if

believed, the evidence against a defendant would support a conviction." *Id*., citing *State v.*

*Smith,* 10th Dist. No. 08AP–736, 2009–Ohio–2166, ¶ 26, *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus and *State v. Yarbrough,* 95 Ohio St.3d 227,

2002–Ohio–2126, 767 N.E.2d 216, ¶ 79.

{¶ 30} Webb's testimony, if believed, is sufficient to supported McKenzie's conviction.

Webb testified that she and McKenzie went to Dundee Street after dropping Barney off on Lois

Lane. She stated that she saw McKenzie gathering items in a purple bag. Webb admitted that she

did not know what was in the bag; but she suspected it was chemicals used to cook

methamphetamine because they had planned to cook it later that day. Finally, Webb stated that

McKenzie asked her to take the bag to the truck and cover-up the bag when they were pulled

over by police. Based on this evidence, a jury could reasonably conclude that McKenzie possessed chemicals used to manufacture methamphetamine. Thus, McKenzie's conviction is indeed supported by sufficient evidence.

{¶ 31} McKenzie argues that his conviction is against the manifest weight of the evidence for similar reasons. He argues that the jury clearly lost its way in weighing his knowledge as to the presence of chemicals because his witnesses' testimony outweighed Webb's testimony. "However, * * * a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony. * * * Therefore, as the trier of fact, the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial." (Citations Omitted.) *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42.

{¶ 32} The jury apparently believed Webb's testimony that McKenzie knew about the chemicals and excised some control over them; and they were free to do so. *State v. Shirley*, 4th Dist. Ross No. 16CA3562, 2017-Ohio-1520, ¶ 23. Importantly, her testimony was corroborated, in part, by the testimony of Deputy Antinore, who testified that McKenzie "cautiously" removed his book from underneath the covered-up bag during the traffic stop.

{¶ 33} After a thorough review of the record, we cannot say that this is an exceptional case where the evidence weighs heavily in favor of McKenzie and where it is clear that the jury lost its way or created a manifest miscarriage of justice.

{¶ 34} Finally, McKenzie argues that his conviction is supported by insufficient evidence, or alternatively, is against the manifest weight of the evidence because the verdicts are inconsistent. He claims that "[o]ne cannot find that he knew the chemicals were present in the truck and had placed them in the vehicle and then conclude that he was not using the truck in

some way to aid in the commission of the offense." However, McKenzie has not separately argued that the trial court erred by accepting inconsistent verdicts, so our consideration of this argument is limited to whether it bears on the sufficiency and weight of the evidence underlying his possession conviction. *State v. Phillips*, 9th Dist. Summit No. 27552, 2017-Ohio-1186, ¶ 20. For the reasons discussed above, it does not.

### IV. Conclusion

{¶ 35} Having concluded that McKenzie's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, we overrule McKenzie's assignments of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
          Marie Hoover, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**