[Cite as *State v. Maxson*, 2018-Ohio-4515.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                    :        Case No. 18CA3

    Plaintiff-Appellee,          :

v.                               :        DECISION AND
                                          JUDGMENT ENTRY
RODNEY MAXSON,                    :

    Defendant-Appellant.         :        RELEASED 11/08/2018

_____

APPEARANCES:

Paul Croushore, Cincinnati, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Robert C. Anderson, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

_____

Hoover, P.J.

{¶1}  Defendant-appellant, Rodney Maxson ("Maxson"), appeals his conviction of criminal damaging following a bench trial in the Ironton Municipal Court. On appeal, Maxson contends that the State failed to prove that he acted with the culpable mens rea. He also contends that his conviction is against the manifest weight of the evidence, because given the evidence presented at trial, it would have been "physically impossible" for him to have damaged the victim's property in the manner alleged. After a careful review of the record, we conclude that both of Maxson's assignments of error are without merit. Accordingly, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶2}     A criminal complaint was filed in the Ironton Municipal Court charging Maxson with one count of criminal damaging in violation of R.C. 2909.06(A)(1). Thereafter, an amended criminal complaint was filed in the trial court to correct the name of the victim, and to correct the degree of the offense. Specifically, the amended complaint alleged that Maxson "did, knowingly by any means cause, or create a substantial risk of physical harm to a VEHICLE, the property of GREG TAYLOR, without consent, in violation of Section 2909.06(A)(1) of the Ohio Revised Code, Criminal Damaging, M-2." (Emphasis sic.) Maxson apparently entered a not guilty plea, although documentation of his plea does not exist in the provided record; and the matter proceeded to a bench trial.

{¶3}     The following facts are adduced from Maxson's trial.

{¶4}     Steven Simpson testified that he is Maxson's neighbor, and lives "within half a city block" of Maxson. Simpson testified that on January 17, 2017, his vehicle had run out of gas, so he and his son walked to a nearby gas station. Simpson testified that on the way back from the gas station, another neighbor, Greg Taylor, was driving by and offered him and his son a ride home. On the way to Simpson's house, Taylor stopped his vehicle at his mailbox to retrieve his mail. Simpson testified that as Taylor was checking his mail, Maxson pulled his vehicle just barely into Maxson's driveway, which is close to Taylor's mailbox, and stopped. Simpson testified that as soon as Taylor began to pull away from the mailbox Maxson began spinning his tires and flung mud and gravel at Taylor's vehicle. Simpson testified that some mud and rock actually entered Taylor's vehicle, through the driver side window that had been rolled down, and chipped both of Simpson's two front teeth. Simpson also testified that a rock had flung and caused the windshield of Taylor's vehicle to crack. During Simpson's testimony, the prosecution offered an exhibit containing four photographs depicting mud splatter on Taylor's

truck, and tire ruts[1] in the area of Maxson's driveway. The trial court ultimately admitted the exhibit as evidence.

{¶5}    Taylor also testified at trial. Taylor verified that he saw Simpson and his son walking down the street, and that he stopped to give them a ride to their house. He also verified that before he dropped them off at their house, he stopped his vehicle at his mailbox to check the mail. According to Taylor, while he was checking the mail, Maxson "pulled in, stopped right up to the end of his driveway", and "[t]hen as soon as I pulled out, got almost right behind him, he gunned it and pulled on up in his driveway." Taylor testified that the driver side window of his vehicle was rolled down when Maxson gunned his vehicle and spread gravel and mud at Taylor's vehicle. Taylor testified that he got mud splattered on the left side of his face, and that a rock flew into his vehicle's windshield causing it to crack. Taylor also testified that the glass on his side view mirror was damaged; and he verified that a rock chipped Simpson's front teeth. Taylor testified that he received an estimate to fix the damage done to his vehicle, and that the estimate totaled $457.

{¶6}    Maxson testified in his own defense. Maxson testified that he has to pull into his driveway slowly, because "there is a little bit of a ditch and it goes up into a hump[,] [s]o * * * every time when I pull into the driveway I got to go slow[,] * * *I pull in slow not to damage my vehicle." Maxson testified that he pulls slowly into his driveway "all the time." He also testified that on the day of the incident it was muddier than usual, because the road across the street had just been paved, which "caused more of a washout." He also testified that it was his first time driving in a while because he had suffered a stroke in October 2016 that affects his balance.

---

[1] During Taylor's testimony, Taylor clarified that he had actually caused the ruts and tire marks depicted in the exhibit, and that they were not marks caused by Maxson's vehicle.

{¶7}    Maxson admitted to seeing Taylor's vehicle at the mailbox when he pulled into the driveway, but denied that he spun his tires intentionally. Maxson actually testified that he did not believe that his tires spun at all, and that he did not even realize that Taylor had passed behind him while he was parking his vehicle.

{¶8}    During Maxson's testimony, a video recording of the incident recorded from a nearby security camera was played for the trial court. The trial court ultimately admitted the video into evidence.

{¶9}    Upon the completion of the presentation of evidence, the trial court found Maxson guilty of criminal damaging as alleged in the complaint. The trial court then sentenced Maxson to thirty days jail-time, but suspended the jail sentence and placed Maxson on one-year probation.[2] The trial court also ordered Maxson to pay restitution to Taylor in the amount of $457, and to Simpson in the amount of $570. Finally, the trial court ordered that Maxson pay court costs. The trial court had ordered Maxson to pay a $200 fine at first; but ultimately it ordered the fine suspended.

## II. Assignments of Error

{¶10}   Maxson assigns the following errors for our review:

First Assignment of Error:

---

[2] R.C. 2929.25(A)(1)(b) states:

> Except * * * when a jail term is required by law, in sentencing an offender for a misdemeanor, other than a minor misdemeanor, the sentencing court may do * * * the following: * * * Impose a jail term under section 2929.24 of the Revised Code from the range of jail terms authorized under that section for the offense, suspend all or a portion of the jail term imposed, and place the offender under a community sanction or combination of community control sanctions authorized under section 2929.26, 2929.27, or 2929.28 of the Revised Code.

R.C. 2929.27(A)(6) authorizes the sentencing court to "impose upon the offender any nonresidential sanction or combination of nonresidential sanctions * * * [including] * * * [a] term of basic probation supervision."

THE TRIAL COURT ERRED WHEN IT CONVICTED THE (sic) MR.
MAXSON OF CRIMINAL DAMAGING WITHOUT EVIDENCE OF A
CULPABLE MENTAL STATE.

Second Assignment of Error:

THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT MR.
MAXSON'S ALLEGED ACTION OF SPINNING HIS TIRES WHEN
PULLING INTO HIS DRIVEWAY COULD HAVE CAUSED DAMAGE TO
MR. TAYLOR AND MR. SIMPSON.

### III. Law and Analysis

{¶11}  In his first assignment of error, Maxson contends that the State failed to prove that

he "knowingly" caused harm to Taylor's vehicle. Rather, Maxson argues that he had no intent to

spin his tires towards Taylor's vehicle, and suggests that he did not even know that Taylor had

pulled behind him while he was parking his vehicle. Because the issue of whether the State

proved that Maxson acted knowingly goes to an essential element of the offense of criminal

damaging, we review Maxson's first assignment of error under the sufficiency of the evidence

standard of review.[3]

{¶12}  Whether a conviction is supported by sufficient evidence is a question of law that

we review de novo. *State v. Allah*, 4th Dist. Gallia No. 14CA12, 2015–Ohio–5060, ¶ 8. In

making this determination, we must determine whether the evidence adduced at the trial, if

believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v.

Davis,* 4th Dist. Ross No. 12CA3336, 2013–Ohio–1504, ¶ 12. "The standard of review is

whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the

light most favorable to the prosecution, any rational trier of fact could have found all the

---

[3] In his appellate brief, Maxson contends that we should review his first assignment of error under the plain error standard, however, given the substance of his argument in support of the error, we believe that a sufficiency of the evidence review is most appropriate.

essential elements of the offense beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶13} Maxson was convicted of a violation of R.C. 2909.06(A)(1), which states that no person shall knowingly, by any means, "cause, or create a substantial risk of physical harm to any property of another without the other person's consent[.]"

{¶14} Maxson argues that the State failed to prove that he "knowingly" caused harm to Taylor's vehicle. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Maxson claims, "[t]here was no testimony indicating that [he] was aware of Mr. Taylor or Mr. Simpson. The only evidence was that [he] had no idea of their presence until after the supposed event."

{¶15} Maxson's argument, however, that he had no idea of Taylor and Simpson's presence, is misplaced. In fact, Maxson himself testified at trial that he saw Taylor's vehicle stopped at the mailbox as he entered his driveway. Given this evidence, coupled with the evidence regarding the proximity of the mailbox to Maxson's driveway, and Maxson's testimony that it was especially muddy on the day of the incident and that his driveway had a large hump, a fact finder could reasonably conclude that Maxson was aware that his conduct would probably result in his spraying of mud and gravel towards Taylor's vehicle. Thus, Maxson's conviction is supported by sufficient evidence. We overrule his first assignment of error.

{¶16} In his second assignment of error, Maxson contends that his conviction is against the manifest weight of the evidence because the photograph of Taylor's vehicle and the video of the incident introduced at trial and admitted as evidence "combine to demonstrate that the facts as alleged by the prosecution and testified to by its witnesses are simply physically impossible

and thus against the manifest weight of the evidence." Specifically, Maxson argues that the photograph of Taylor's vehicle shows the driver's side window is rolled up and mud is visible on the window; and thus, the window could not have been rolled down as alleged by Taylor and Simpson. He also argues that given the angle of the mud splatter pattern, as shown in the photograph, it would have been physically impossible for any debris to have struck the driver's sideview mirror. Finally, Maxson argues that the "angles and photographic evidence" as depicted in the video "are completely inconsistent" with Taylor's and Simpson's testimony.

{¶17} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be determined by the trier of fact. *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014–Ohio–1941, ¶ 23. A trier of fact "is free to believe all, part or none of the testimony of any witness who appears before it." *Id*. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*

{¶18} First, we disagree with Maxson's contention that the photographic evidence is wholly inconsistent with the testimony of Taylor and Simpson. While there does appear to be a

small amount of mud on the upper part of the front driver side window, as depicted in the photograph, it is a much smaller amount as compared to the rear driver side window, or to the rest of the driver side body of the vehicle. Viewing the photograph objectively, it appears possible that the window could have been partially rolled down, with only a few inches of the upper part of the window exposed. More importantly, at trial, both Simpson and Taylor provided explanations as to why a small amount of mud is visible on the window. Simpson explained that the photograph was taken by law enforcement two days after the incident, and that the window had been rolled up before the picture was taken causing the small amount of mud on the window. But, he was emphatic that the window was rolled down when the incident occurred. Taylor provided more detail, testifying that "[the] window was down [during the incident], it had been rolled up a couple of times after that, I roll the windows up and lock the doors every night on the vehicle." Taylor also verified that the photograph was taken two days after the incident, at law enforcement's request, and that the mud transferred to the window when he rolled the window up.

{¶19} We also disagree with Maxson's contention that the angle of the mud splatter pattern, as shown in the photograph, and the angles and photographic evidence as depicted in the video "are completely inconsistent" with Taylor and Simpson's testimony. Rather, after having reviewed the photograph and video, we believe the exhibits are actually consistent with Taylor's and Simpson's testimony and the damage they alleged occurred to the vehicle. Maxson seems to take great issue with the testimony concerning damage to the sideview mirror of the vehicle, contending it would be impossible for any gravel to crack the mirror if Taylor's vehicle was directly behind and perpendicular to his vehicle, when the incident occurred. However, this issue was addressed at trial, and Taylor explained that he believed the gravel "bounce[d]" off other

parts of the vehicle and hit the glass part of the mirror. The trial court apparently thought this explanation was reasonable, and as the trier of fact, it was free to do so. *See State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42 (Citations omitted.) ("However, * * * a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony. * * * [A]s the trier of fact, the [trial court] was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial."); *State v. Shirley*, 4th Dist. Ross No. 16CA3562, 2017-Ohio-1520, ¶ 23 (trier of fact found the State's version of events more credible than defendant's; and it was free to do so). The trial court was able to observe the witnesses on the witness stand, and was in the best position to judge and weigh the credibility of the witnesses. Put simply, the trial court had before it sufficient facts to ascertain the witnesses' credibility and to weigh it against the other evidence presented at trial. We will not substitute our judgment for that of the trial court.

{¶20}  After a thorough review of the record, we cannot say that this is an exceptional case where the evidence weighs heavily in favor of Maxson and where it is clear that the trier of fact lost its way or created a manifest miscarriage of justice. Accordingly, we overrule Maxson's second assignment of error.

### IV. Conclusion

{¶21}  Having overruled both of Maxson's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ironton Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.


For the Court


By: _____
        Marie Hoover, Presiding Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**