[Cite as *State v. Shary*, 2021-Ohio-3604.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109487 |
| v. | : | |
| ROBERT SHARY, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 7, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-630128-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and David Elias, Assistant Prosecuting Attorney, *for appellee.*

Brian R. McGraw, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Robert Shary ("Shary"), appeals from his convictions following a jury trial. He raises the following assignments of error for review:

1. Information contained within the search warrant was inaccurate and embellished and the trial court erred in not suppressing the search warrant.

2. Convictions lacked sufficient evidence and did not meet the manifest weight standard.

{¶ 2} After careful review of the record and relevant case law, we affirm Shary's convictions.

## I. Procedural and Factual History

{¶ 3} In May 2018, detectives received a citizen complaint regarding drug sales occurring in the upstairs unit of a two-family residence (referred to as "the residence") located on West 78th Street in Cleveland, Ohio. The complainant provided the name "Robert Shary" as the person suspected of selling the drugs in the unit. The investigating detectives later learned from an anonymous caller that "Robert Shary" lives in the upstairs unit of the residence and has access to the attic. When the detectives investigated Shary's criminal history, they discovered that he had prior convictions for drug possession in Cuyahoga County and Summit County.

{¶ 4} Based on this information, detectives began surveilling the residence. In the course of their investigation, detectives observed numerous individuals coming and going from the residence. According to Detective Larry Smith ("Det. Smith") of the Cleveland Police Department, these individuals would knock on the door, enter the residence for several minutes, and leave immediately thereafter. This activity, based on the detectives' joint experience and training, indicated possible drug trafficking.

{¶ 5} While surveilling the residence, the detectives initiated a traffic stop of a vehicle seen leaving the residence. Prior to the stop, the detectives observed the driver enter the residence for several minutes before returning to his vehicle and driving away. The driver indicated to the detectives that he had just purchased methamphetamine from an individual named "Bob." Relevant to this appeal, however, the driver did not specify that the man he knew as "Bob" was, in fact, Robert Shary.

{¶ 6} Several days after the first traffic stop, the detectives initiated a second traffic stop of a driver seen leaving the residence. During the traffic stop, the driver, who was in possession of crack cocaine, informed the detectives that he was visiting an individual named "Bob" while inside the residence. The driver would not tell the detectives where he obtained the crack cocaine. However, the driver did confirm that "Bob" lived in the upstairs unit of the residence. Again, the driver did not specify that the man he knew as "Bob" was, in fact, Robert Shary.

{¶ 7} During further surveillance of the residence, detectives observed surveillance cameras on the exterior of the building. In the detectives' joint training and experience, the location of the surveillance cameras was suspicious because (1) it allowed individuals inside the residence to detect if law enforcement was approaching the residence, and (2) prevented law enforcement from conducting a trash pull to determine whether there was possible drug activity occurring in the residence.

{¶ 8} Based on the information gathered during the investigation of the residence, Det. Smith completed an affidavit for a warrant to search the residence, including its "curtilage, common areas, storage areas, and persons therein."  In the affidavit, Det. Smith averred as follows:

> Affiant avers that he has probable cause to believe, and does believe, that with [the residence], further described as a double-family residence, * * * there is now being unlawfully kept, concealed and possessed the following evidence of a criminal offense:
>
> Methamphetamine, crack cocaine, and any other narcotic drugs, and/or controlled substances; instruments and paraphernalia used in taking or preparing drugs for sale, use, or shipment; records of illegal transactions, articles of personal property, and papers tending to establish the identity of the persons in control of the premises; other contraband, including, but not limited to, money, communications equipment including telephones, answering machines tapes, as well as computers, including, but not limited to, computer hard drives and monitors and other hardware and software, and weapons being illegally possessed therein; safes; and/or any and all evidence pertaining to the violations of laws of the state of Ohio, to wit: Chapters 2923, 2925, and 2925.37 of the Revised Code.

{¶ 9} In June 2018, a reviewing judge issued a warrant to search the residence.  During the execution of the search warrant, the detectives located quantities of various narcotics and criminal tools indicative of drug trafficking.

{¶ 10} In July 2018, Shary and his codefendants, Rachel Walker ("Walker") and Edward Thornton ("Thornton"), were named in a criminal indictment in Cuyahoga C.P. No. CR-18-630128-A.  The indictment charged Shary with drug trafficking in violation of R.C. 2925.03(A)(2), with forfeiture specifications and a

schoolyard specification[1] (Count 1); drug possession, to wit: methamphetamine, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 2); drug possession, to wit: fentanyl, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 6); drug possession, to wit: methylenedioxymethamphetamine ("MDMA"), in violation of R.C. 2925.11(A), with forfeiture specifications (Count 7); drug possession, to wit: amphetamine, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 8); drug possession, to wit: a compound, mixture, preparation, or substance containing cocaine, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 9); drug possession, to wit: heroin or a compound, mixture, preparation, or substance containing heroin, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 10); drug possession, to wit: lorazepam, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 11); drug possession, to wit: dronabinol, in violation of R.C. 2925.11(A), with forfeiture specifications (Count 12); and possession of criminal tools in violation of R.C. 2923.24(A), with forfeiture specifications (Count 15).

{¶ 11} In January 2020, Shary filed a motion to suppress all evidence seized, and statements made, during the execution of a search warrant at the residence. In the motion, Shary argued that "he can establish by a preponderance of the evidence that there are incorrect and unbelievable statement[s] included in the affidavit by

---

[1] On January 6, 2020, the state dismissed the schoolyard specification attached to the drug trafficking offense charged in Count 1 of the indictment.

the affiant knowingly or intentionally, or with reckless disregard for the truth, and the incorrect statement[s] were necessary to the finding of probable cause, for the search warrant." Shary further argued that the search warrant affidavit failed to make a sufficient connection "between the residence to be searched and the facts of criminal activity."

{¶ 12} The state opposed Shary's motion to suppress, arguing that the information set forth in the search warrant affidavit established that there was probable cause to believe criminal activity was occurring at the residence.

{¶ 13} A hearing was held to address the pending motion to suppress. At the hearing, the court heard testimony from Det. Smith and reviewed the four corners of the affidavit submitted in support of the search warrant. At the conclusion of the hearing, the trial court denied Shary's motion to suppress, stating, in relevant part:

> After reviewing State's Exhibit 1, which is the search warrant that was signed by [a judge] on June 19, 2018, looking at the four corners of the search warrant itself, I am going to find that [the judge] was provided sufficient probable cause to sign that search warrant.

(Tr. 42.) The matter then proceeded to a jury trial and the following facts were adduced.

{¶ 14} At trial, Athan Sarantopoulos ("Sarantopoulos") testified that he is the owner of a duplex residence located on West 78th Street in Cleveland, Ohio. Relevant to this appeal, Sarantopoulos identified Shary in court and confirmed that Shary was renting the upstairs unit of the residence at the time the warrant was executed in June 2018.

{¶ 15} Detective William Salupo, Jr. ("Det. Salupo") of the Cleveland Police Department's vice unit, provided comprehensive testimony regarding his training and experience with narcotics and trafficking investigations. With respect to this case, Det. Salupo testified that in June 2018, detectives obtained a warrant to search Shary's residence for narcotics following an extensive investigation that focused on Shary. Det. Salupo confirmed that he participated in the "systematic and thorough search of the residence." (Tr. 258.) His body camera, which captured the search as it occurred, was played for the jury.

{¶ 16} Det. Salupo testified that the search warrant was executed at approximately 6:30 a.m. When Det. Salupo entered the residence, he encountered "numerous" individuals, including Shary, who were present inside the home at the time a SWAT unit entered the residence to secure the scene. (Tr. 257.) Ultimately, the detectives recovered a tan handbag under a couch cushion located in the living room that contained U.S. currency, a ledger, a scale, a "loaded syringe," pills, marijuana, and a large amount of methamphetamine that was indicative of drug trafficking. In other areas of the residence, the detectives found additional quantities of marijuana, pills, and a metal tin containing drug residue. The detectives also seized other items indicative of drug activity, including packaging material, straws, spoons, baggies, scales, grinders, and an overdose kit. Finally, Det. Salupo testified that the detectives discovered an envelope and personal papers that listed Shary's address as the West 78th Street residence.

{¶ 17} Officer Kevin Berigan ("Officer Berigan") of the Cleveland Police Department testified that he was dispatched to assist the vice unit in executing the search warrant at Shary's residence. Officer Berigan stated that when he arrived on the scene, there was a line of people out the door. Once these individuals were secured, Officer Berigan stayed with them while members of the vice unit completed the search. Thereafter, Officer Berigan was tasked with transporting Shary and codefendant Thornton to the county jail for processing. Officer Berigan explained that before he placed Shary and Thornton in his zone car, he had completed a vehicle inspection to ensure that no contraband was contained therein. Upon removing Shary and Thornton from his zone car, however, Officer Berigan discovered "a baggie of drugs in the back seat of [the] vehicle." (Tr. 348.)

{¶ 18} Det. Smith reiterated much of his prior testimony from the suppression hearing, confirming that he participated in the investigation and search of Shary's residence. Det. Smith testified that when he arrived at the scene to conduct the search of Shary's residence, he observed people "coming and going." Det. Smith stated that before the search was executed, approximately five individuals standing outside the residence were detained, and approximately seven or eight individuals inside the upstairs unit of the residence were detained. Once the residence was secured, the detectives entered the home, provided Shary a copy of the search warrant, and read him his Miranda rights. Consistent with Det. Salupo's testimony, Det. Smith testified that based on his training and experience, the ledger, scales, packaging materials, and quantity of drugs recovered from the

residence were indicative of drug trafficking. Det. Smith also testified that the residence had surveillance cameras that were positioned in a manner that would allow

> the person that resides at the house to have a tactical advantage on somebody coming up to the house or for a seller it can show somebody who is at the door waiting to come up and purchase narcotics.

(Tr. 395.)

{¶ 19} After the search was completed, Det. Smith spoke with Shary. During this conversation, Shary informed Det. Smith that codefendant Walker was willing to take responsibility for the narcotics found inside the tan handbag. Walker, who was previously observed speaking with Shary while detained on the couch, was crying during this interaction.

{¶ 20} Forensic drug chemist, Megan Peders ("Peders"), of the Cuyahoga County Medical Examiner's Office, testified that she analyzed evidence seized in this case for the presence or absence of controlled substances. The results of the forensic testing were set forth in physical evidence examination report marked state's exhibit No. 34. Peders determined that the methamphetamine recovered from the tan handbag weighed 45.08 grams. In addition, other items submitted for testing contained 15-unit doses of Lorazepam; 27-unit doses of Dronabinol; .30 grams of methamphetamine; .21 grams of methamphetamine; .30 grams of methamphetamine; .12 grams of methamphetamine; .04 grams of marijuana; .7 grams of marijuana; .52 grams of marijuana; .1o grams of marijuana; 1-unit dose of

amphetamine; and trace amounts of MDMA, Delta-9-THC, heroin, fentanyl, and methamphetamine residue.

{¶ 21} At the conclusion of trial, Shary was found guilty of all counts and accompanying specifications. He was later sentenced to an aggregate six-year prison term.

{¶ 22} Shary now appeals from his convictions.

## II. Law and Analysis

### A. Motion to Suppress

{¶ 23} In his first assignment of error, Shary argues the trial court erred by denying his pretrial motion to suppress because the information contained within the search warrant affidavit was "shaky and vague."

{¶ 24} Appellate review of a motion to suppress generally presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* With respect to the trial court's conclusions of law, however, our standard of review is de novo. *Id.*

{¶ 25} "The security of one's privacy against arbitrary intrusion by the police — which is at the core of the Fourth Amendment is basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), *overruled on other grounds*, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶ 26} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect against unreasonable searches and seizures and provide that a warrant can be issued only if probable cause for the warrant is supported by an oath or affirmation and particularly describes the place to be searched and the persons or things to be seized. *See also* Crim.R. 41(C); R.C. 2933.23.

{¶ 27} In deciding whether probable cause exists for the issuance of a search warrant, the issuing judge must make "'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, following *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[C]onsiderations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 34, citing 2 LaFave, *Search and Seizure*, Section 3.7(a), (b), (d) (5th Ed.2012). "'To establish probable cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search.'" *State v. Marler,* 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 26,

quoting *State v. Freeman,* 4th Dist. Highland No. 06CA3, 2006-Ohio-5020, ¶ 13. "The nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence." *State v. Carter*, 2d Dist. Greene No. 2011 CA 11, 2011-Ohio-6700, ¶ 10, citing *Freeman* at ¶ 13.

{¶ 28} The duty of the reviewing court is to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Castagnola* at ¶ 35; *George* at paragraph two of the syllabus. When conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should accord "great deference" to the issuing judge's determination of probable cause; "doubtful or marginal cases should be resolved in favor of upholding the warrant." *Id.* Neither a trial court nor an appellate court may substitute its judgment for that of the issuing judge by determining de novo whether the affidavit provided sufficient probable cause. *Id.*

{¶ 29} On appeal, Shary suggests that Det. Smith's affidavit in support of the search warrant contained false or embellished statements of fact that "had the effect of convincing the judge reviewing the affidavit that the supportive information was far more precise than in reality." Specifically, Shary maintains that Det. Smith recklessly disregarded the truth when he identified Shary by name as the person connected to the two individuals stopped by the detectives after they were observed leaving the residence. Contrary to the information set forth in the affidavit, Shary

maintains that "the only information provided to law enforcement from people coming out of the house is that someone in there was named 'Bob.'"

{¶ 30} Search warrant affidavits are presumed valid. *State v. Sheron*, 8th Dist. Cuyahoga No. 98837, 2013-Ohio-1989, ¶ 29. However, where a search warrant is based on false statements in the affidavit submitted to establish probable cause, the fruits of the search warrant must be suppressed. *Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A "*Franks* challenge," which challenges the factual veracity of a warrant affidavit, requires allegations of deliberate falsehood or reckless disregard for the truth. *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980), citing *Franks* at 171.

{¶ 31} Relevant to this appeal, the United States Supreme Court explained in *Franks* that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-156. "Reckless disregard" under *Franks* means that the affiant had serious doubts of an allegation's truth. *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992), citing *U.S. v. Williams*, 737 F.2d 594 (7th Cir.1984).

{¶ 32} After careful review, we find Shary has failed to carry his burden in rebutting the presumed validity of the affidavit in the absence of any evidence of deliberate falsehood or reckless disregard for the truth. Det. Smith explained at the suppression hearing that the investigating detectives has credible information linking "Robert Shary" to the residence, including (1) a call-in complaint that reported "drug activity" in the upstairs unit of the residence and identified Shary by name, and (2) information from an anonymous caller that "Robert Shary does live at [the residence] and utilizes the attic as well." (Tr. 36.) Although Det. Smith conceded that the detained individuals referred to an individual located inside the residence as "Bob" and not "Robert," Det. Smith explained that he had a reasonable and justified belief that the individuals were referring to Shary based on the totality of the information gathered during the course of the vice unit's investigation. Under these circumstances, we are unable to conclude that Det. Smith, as the affiant, knowingly made a false statement, or "had serious doubts of an allegation's truth."

{¶ 33} Further, even if Det. Smith's direct reference to Robert Shary was excluded from the paragraphs of the affidavit that referred to the traffic stops, the remainder of the affidavit established sufficient probable cause to search the residence. In this case, detectives conducted an extensive investigation of the residence following a complaint that Shary was engaging in drug activity "at all hours" of the day in the upstairs unit of the residence. During the course of their investigation, detectives observed various factors indicative of unlawful drug activity, including (1) individuals walking in and out of the residence via foot or via

car traffic, (2) the short duration of the visits inside the residence, and (3) suspiciously placed surveillance cameras. As set forth in the affidavit, the investigation culminated in the detention of two individuals seen leaving the residence. One individual admitted that he purchased drugs inside the residence while the second individual was found to be in possession of drugs after leaving the residence.

{¶ 34} When considering the totality of the information contained in the search-warrant affidavit, probable cause existed to search the residence, regardless of whether the stopped individuals did or did not refer to Shary by his government name. For the purposes of suppression, it was irrelevant who the detained individuals were visiting inside the residence prior to their traffic stop given the overwhelming evidence of drug activity inside the residence. As stated, the search warrant sought to discover information regarding the identity of the person(s) in control of the premises by permitting law enforcement to search all papers and individuals located inside the residence at the time of the search. Ultimately, Shary and papers linking him to the residence were discovered inside the residence at the time of the search. Under these circumstances, we find Det. Smith's reference to Shary by name in the supporting affidavit, when the detained individuals referred to a person named "Bob," did not negate the probable cause supporting the search warrant.

{¶ 35} Accordingly, we conclude that the issuing judge had a substantial basis for finding probable cause to issue the warrant to search the residence. Based

on the information set forth in the supporting affidavit, the issuing judge could have reasonably concluded that there was a fair probability that other drugs or evidence of drug trafficking would be found inside the residence. Because the record reflects that the issuing judge had a substantial basis for finding a fair probability that drugs and the other items specified in the search warrant would be found in the residence, the trial court did not err in refusing to suppress the evidence seized during the search of the residence.

{¶ 36} Shary's first assignment of error is overruled.

## B. Sufficiency and Manifest Weight of the Evidence

{¶ 37} In his second assignment of error, Shary argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 38} "[T]he test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer

other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32.

{¶ 39} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden* at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 40} At trial, the state maintained that Shary, at the very least, aided and abetted his codefendants in the commission of the drug offenses. At the close of trial, the court provided the jury with a complicity instruction pursuant to R.C. 2923.03. The statute provides in pertinent part that "[n]o person, acting with the kind of culpability required for the commission of the offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender. R.C. 2923.03(F). The statute further states that "[i]t is no

defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." R.C. 2923.03(B).

{¶ 41} To prove complicity by aiding and abetting under R.C. 2923.02(A)(2), the evidence must demonstrate that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Such intent may be inferred from the circumstances surrounding the crime. *Id.* "'[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id.* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). A common purpose among persons to commit a crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct. *State v. Gonzalez*, 10th Dist. Franklin No. 10AP-628, 2011-Ohio-1193, ¶ 25, citing *Pruett.*

{¶ 42} In this case, Shary was convicted of drug possession in violation of R.C. 2925.11(A). Count 2 of the indictment pertained to the discovery of an amount of methamphetamine that equaled or exceeded five times the bulk amount. Counts 6, 7, 8, 9, 10, 11, and 12 related to the discovery of fentanyl, MDMA, amphetamine, cocaine, heroin, lorazepam, and dronabinol. To sustain a conviction for drug possession, the evidence must demonstrate that Shary knowingly obtained,

possessed, or used "a controlled substance or a controlled substance analog." R.C. 2925.11(A).

{¶ 43} Shary was also convicted of possessing criminal tools in violation of R.C. 2923.24(A). The criminal tools relevant in this case included a cell phone, three digital scales, U.S. currency, a ledger, packaging materials, and a grinder. To sustain a conviction for possession of criminal tools, the state was required to prove that Shary possessed or had under his control "any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 44} In challenging the evidence supporting his drug possession and possession of criminal tools convictions, Shary broadly asserts that there was no testimony or forensic evidence linking him to the drugs or criminal tools seized from the residence. Shary notes that he was not in physical possession of any contraband and that there were numerous individuals inside the home at the time the search warrant was executed.

{¶ 45} "Possession" is statutorily defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). A person can have actual or constructive possession of a controlled substance. *State v. Payne*, 8th Dist. Cuyahoga No. 107825, 2019-Ohio-4158, ¶ 67, citing *State v. Messer*, 107 Ohio App.3d 51, 56, 667 N.E.2d 1022 (9th Dist.1995). "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v.*

*Johnson*, 8th Dist. Cuyahoga No. 95816, 2011-Ohio-3469, ¶ 11, quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within [the individual's] immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982), citing *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Constructive possession may be established by circumstantial evidence. *Payne* at ¶ 68.

{¶ 46} Shary correctly states that he was not found to be in actual possession of drugs or criminal tools at the time the search warrant was executed at his home. Relevant to this case, however, this court has recognized that "knowledge of an illegal object on one's property is sufficient to show constructive knowledge as long as the person is conscious of the object's presence." *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 46, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691; *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982). Similarly, although a defendant's mere proximity is in itself insufficient to establish constructive possession, one's "'presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.'" *State v. Wiley*, 8th Dist. Cuyahoga No. 107417, 2019-Ohio-3092, ¶ 14, quoting *State v. Chafin*, 4th Dist. Scioto No. 16CA3769, 2017-Ohio-7622, ¶ 41; *see also State v. Slade*, 145 Ohio App.3d 241, 243, 762 N.E.2d 451 (8th Dist.2001) ("readily usable drugs in close

proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession").

{¶ 47} After careful review of the evidence, we find the state presented sufficient evidence to establish that Shary consciously exercised dominion and control over the drugs and criminal tools discovered in his residence. In this case, the state's evidence demonstrated that the vice unit investigated reported drug activity in the residence and confirmed that Shary was "living in the house." (Tr. 377.) Upon the execution of the warrant, Shary was present inside the residence and personal papers containing his name and the residence's address were discovered therein. At trial, Shary's landlord confirmed that Shary was renting the upstairs unit at the time the search warrant was executed. Once inside the upstairs unit, Det. Salupo testified that drugs and drug paraphernalia were found in various locations. Regarding the handbag hidden under a couch cushion, Det. Salupo testified that in his experience as a detective and in conducting search warrants, it is common for individuals to try and conceal drugs located inside the home. When Shary was confronted with the discovered drugs, he became agitated and immediately attempted to have his girlfriend, codefendant Walker, take responsibility for the drugs. Regarding Shary's knowledge of the drug activity occurring inside the home, Det. Smith explained that the breadth of the contraband discovered inside the residence, coupled with the number of individuals present at the scene at the time of the search, indicated that Shary was operating a "tramp house," which Det. Smith described as:

> a location where numerous people go and buy drugs and they'll use drugs there. Generally, what I've seen is * * * the seller will be within that house.

(Tr. 412.) Collectively, the evidence demonstrated, albeit circumstantially, that Shary permitted rampant drug use in the residence and/or encouraged drug use in the residence for profit. Accordingly, we find Shary had both knowledge of the drugs and criminal tools, and the ability to exercise dominion and control over the contraband.

{¶ 48} Furthermore, while there were approximately seven or eight individuals in Shary's residence at the time of the search, this is not dispositive of the issue of whether he had constructive possession of the contraband. *See State v. Scalf,* 126 Ohio App.3d 614, 620, 710 N.E.2d 1206 (8th Dist.1998) (finding that possession may be established where the defendant occupies the premises with others but the drugs are found in the defendant's living area and in plain view throughout the apartment). Exclusive control over the premises is not required. *State v. Howard*, 8th Dist. Cuyahoga No. 85034, 2005-Ohio-4007, ¶ 15, citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993 Ohio App. LEXIS 5394, *16 (Nov. 9, 1993) (concluding that nothing in the statute states that illegal drugs must be in the sole or exclusive possession of the accused at the time of the offense); R.C. 2925.01(K). The fact that others were on the premises in addition to Shary does not mean that Shary could not exercise dominion or control over the drugs and criminal tools. This is particularly true where Shary lived in the residence and Det. Smith estimated that many of the individuals present inside the home were there because

Shary was operating a home designated for drug-sales and use. We, therefore, find the state's evidence was sufficient to prove that Shary possessed the seized drugs and criminal tools or aided and abetted another in their possession of the items.

{¶ 49} Finally, Shary was convicted of drug trafficking in violation of R.C. 2925.03. The drug trafficking conviction pertained to the methamphetamine that was discovered inside the handbag that was hidden under a couch cushion. To sustain a conviction for trafficking as charged, the evidence must demonstrate that Shary knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed "a controlled substance or a controlled substance analog," with knowledge or a reasonable belief that "the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2).

{¶ 50} R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." Further, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

{¶ 51} At trial, Det. Salupo provided extensive testimony regarding his training and experience as a member of the vice unit. Det. Salupo described the various methods for packaging drugs for sale and explained the significant role certain items, including plastic baggies, cell phones, U.S. currency, scales, ledgers, and grinders, have in the drug trade. Det. Salupo also discussed the actions that are

taken during a typical investigation into drug activity and explained the factors that distinguish a person who merely possesses drugs from a person who is engaged in trafficking.

{¶ 52} In this case, the investigating detectives observed numerous individuals coming and going from Shary's upstairs residence at approximately 6:30 a.m., which Det. Salupo stated is not uncommon in the sale of drugs. When the detectives entered the home, they discovered a large quantity of methamphetamine, various pills, and drug residue on items used in the drug trade, including scales, syringes, and grinders. As discussed, the detectives also discovered other items used in the sale of drugs, such as a ledger, packaging materials, a cell phone, and U.S. currency. Det. Salupo testified that the large amount of methamphetamine found inside Shary's residence was indictive of drug trafficking. (Tr. 330.) Det. Smith agreed, stating that, based on his training and experience, the methamphetamine found in Shary's residence was indicative of drug trafficking based on its weight, street value, and proximity to scales, packaging materials, and a ledger. (Tr. 391-393.)

{¶ 53} Viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of drug trafficking proven beyond a reasonable doubt. The evidence established that Shary permitted numerous individuals to come and go from his home for purposes related to drug use. Furthermore, Shary was in possession of a quantity of drugs indicative of trafficking, and his residence was littered with tools used to facilitate, package,

weigh, and document drugs for sale. As recognized by this court, items such as plastic baggies, wrapping devices, digital scales, and large sums of money are often used in drug trafficking and may constitute circumstantial evidence of the conduct proscribed by R.C. 2925.03(A)(2). *State v. Hawthorne*, 8th Dist. Cuyahoga No. 102689, 2016-Ohio-203, ¶ 21, citing *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 60; *State v. Forte*, 8th Dist. Cuyahoga No. 99573, 2013-Ohio-5126, ¶ 10; *State v. Rutledge*, 6th Dist. Lucas No. L-12-1043, 2013-Ohio-1482, ¶ 15 (collecting cases). This evidence was sufficient to prove that Shary had trafficked drugs or aided and abetted another in the trafficking of drugs.

{¶ 54} Moreover, we are unable to conclude that Shary's convictions are against the manifest weight of the evidence. Here, Shary does not challenge weight afforded to any specific testimony or evidence, but broadly reiterates his position that the state failed to connect him to the drugs and drug paraphernalia discovered inside the residence. We disagree. As previously discussed, the state presented ample evidence connecting Shary to the residence in question and the drug activity occurring inside his home. The state witnesses were thoroughly cross-examined about Shary's involvement in their criminal investigation and the detective's body camera videos were played for the jury at trial, allowing the jury to see relevant portions of the search as it occurred. Under these circumstances, the jury was presented with all relevant information, and was free to infer from the evidence that Shary knowingly engaged in drug trafficking and was in possession of various controlled substances and criminal tools. In light of the circumstantial evidence

presented at trial, we cannot say the jury lost its way or created such a manifest miscarriage of justice that Shary's convictions must be reversed.

{¶ 55} Shary's second assignment of error is overruled.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR